ORIGINAL

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS

_____ DIVISION

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2019 AUG 28  PM 12: 27

DEPUTY CLERK _____ ER

DEVABHAKTUNI
**Plaintiff**

v.

3-19CV - 1743W

_____
Case Number

CPS, DPPS, HOSPITALS HP, BESTBY etc.
**Defendant**

ADD ON DOCUMENTS TO SUPPORT CASE

SUPPORTING DOCUMENTS FOR THE CASE

— MOHAN KUMAR RAUT BEHAVIOR TEXT MESSAGES

— KELSON BROOKS, KELSON FISCHER BEING DANCE INSTRUCTOR

PROOF

— LETTER DROPPED AT MEDICAL CENTER

— OTHER DOCUMENTS.

— WILL ADD MORE IN NEXT ONE

*Attach additional pages as needed

| | |
|---|---|
| Date | 08/28/2019 |
| Signature | Devabhaktuni |
| Print Name | D. MANOGNA |
| Address | 9255 LEBANON RD, #2107, FRISCO TX -75034 |
| City, State, Zip | FRISCO, TX -75034 |
| Telephone | 469-978-4941 |

# Texas Plano Presbyterian behavioral center

# To doctor Husnian Ashraf

Need Explanation for the illegal diagnosis performed on me "**MANOGNA DEVABHAKTUNI**" during the period from 01/06/2019 – 01/24/2019 without MY Written CONSENT otherwise a major case will be filed in the federal court and the US government against to the medical system and the hospital that I got treated.

FYI – ONE OF THE NURSES IN THE SPRING WOOD BEHAVIORAL CENTER KEPT WATHCING MY BARE BODY WHILE I WAS TAKING A SHOWER IN BATHROOM AFTER I WOKE UP IN SPRING WOOD BEHAVIORAL HOSPITAL WHERE I WAS ADMITTED IN THE PLANO PRESBYTERIAN HOSPITAL ER ON 02/06/2019 AROUND 10:00 AM WHICH IS ALMOST AFTER 2 DAYS AND I DIDN'T

# HAVE ANY ORNAMENTS OR WEAPONS ON ME.

## MY STORY

A LDS Church member "Dasha Barton" that is in my ward of church took me and kept me on an illegal malpractice diagnosis from 01/04/2019 – 01/06/2019 soon after I got my citizenship on 12/10/2018 and I ended up in a stage where I don't even know or have any information about what exact diagnosis happened on me WHICH IS VERY BIG CRIME AGAINST US FEDERAL LAW. There are multiple medical examinations performed on me without my consent or my friend's consent which is totally illegal as per the US Federal Law and will be filed in the court against to the Medical Center by the patient.

******** I HAVE LITERALLY PROOF OF "EXPLANATION OF BENEFITS" DOCUMENT SENT BY MY MEDICAL INSURANCE COMPANY WHICH HAS EACH AND EVERY DETAILS OF THE EXAMS PERFORMED ON MY PHYSICAL BODY. I NEED TO KNOW RIGHT AWAY WHY THOSE EXAMS ARE PERFORMED ON ME WITH MY CONSENT. NONE EXPLAINED ME WHAT KIND OF EXAMINATIONS ARE BEING DONE ON ME AND MADE ME TO SIGN THE PAPER WORK AFTER SEDUCING ME WITH THE MEDICATIONS THAT WERE PRESCRIBED BY THE DOCTORS WHOM I HAVEN'T MET OR SEEN WHEN I WAS IN THE MEDICAL CENTER FOR 7 DAYS.

I never been hospitalized with any of the major issues since the day I was born. Due Dasha Barton I ended up in to the medications and diagnosis done on me with out my consent when I was there for 7 days in hospital which is not relevant for my case. I was not able to recollect any of the incidents that happened since the moment I went it to CT scan except them feeding me forcefully poison food "Chicken Marsala, Chocolate Cake, cold roasted noodles" without my consent or without me ordering it.

This is very big illegal diagnosis comment on me by medical center without me mentioning to them by myself.

FYI – I even went to Frisco Police Station myself to get assistance on the day to get to check my apartment because of what she did on 01/04/2019 when she came to visit me as per my request. I never carried any drugs (or) weapons or have any illegal case filed against to me for that since 2012. Also I never mentioned I had dangerous weapons at home to kill myself (or) my kids or threaten anyone around me (or) no one got me there saying that I was very dangerous human being that cannot be allowed to live in normal environment.

Because of the treatment, examinations that were done on me and the medications that were prescribed to cover the truth made my heart beat go up loud and also caused me nervous pain in my brain which was never there previously before I stepped in to hospital. Having hallucinations is different than feeling my brain will explode anytime if I won't sleep whole day.

As per my understanding hospital management performed wrong treatment and diagnosis on me to get me killed myself in the hospital when I was there or if I stepped out of the hospital which is major issue to my family.

I am not going to pay any medical center bills until the main diagnosis is being explained properly in away a normal person can understand. The medications that were given to me made me to get disabled and become physically handicapped instead of helping me to improve myself and get back to normal stage and get to work with my life conditions and my family.

I had to wean off my medications soon after I left the hospital and weaning helped me to take care of my kids who is 7 years and 5 years old. I opened CPS case with them because of harassments happened on them in my absence during hospitalization by their biological father whom I divorced on 09/19/2015.

Having Kids back on 02/18/2019

From:  manogna devabhaktuni (manognadevabhaktuni@yahoo.com)

To:    chantell.griffin@dfps.state.tx.us

Date:  Saturday, February 16, 2019, 9:19 PM CST


Good Evening Chantell,

As per divorce decree I need to pick up kids in the evening at 6:00 PM on the day before the school starts. This rule has been placed since the day I started the divorce process and the rule is approved and applicable until my son starts his kindergarten which is the September month of 2019.

**FYI -- I am following the rules that were given in the divorce decree and I am picking up kids on 02/18/2019 evening from their schools.**

I am not sure what changes CPS is applying to my case without my knowledge (or) consent (or) court approval to current rules that were placed and approved in divorce decree on 02/19/2016. **I am the one who filed and divorced Mohan Kumar Ravi based on his cruel behavior towards kids once they were born using his behavioral harassment on me which was there since July 2002 - September 2015.**

I know you kept bringing up my recent medical condition as an issue for my behavior towards my kids and also took contact name to keep them as supervision for my behavior towards my kids like I am criminal and I am an offensive for the charges against to kids if I won't send them to kid's dad place (which was not safe and secured as per the case that I opened myself with you).

Since I opened case, You haven't provided me any updates regarding the case and all of sudden you texted me asking me to call you. Over the call you started telling me various reasons to have my kids with me over this weekend which I felt kind of threat from CPS towards my behavior.

Though I filed the case with CPS, I had to keep the kids secured for last 4 weeks because of how kids had been treated and harassed when I was hospitalized.

My medical condition doesn't have to do anything with the kids behavioral changes. You have all the proofs along with the below mentioned ones

*****
**1. Getting back to normal track in office work ( I sold two life insurance policies in two weeks of time).**
**2. Opening up investigation about kids behavioral changes with their schools ( Primrose at Lake hill and Allen Elementary School).**
**3. Taking them to ER when my daughter complained about existing chest pain which has been started in the month of January due to the exposure of heavy smoking from Mohan.**
**4. Taking them to Children's Medical Center for their full body check up.**
**5. Notifying my employer to keep them on track about my health, my behavior with other people in surroundings and also kids behavior and the harassment that was done on them by kids dad (Mohan).**
**6. Opening case with CPS by myself by walking in to the legal system door of Child Protection Services.**

Case 3:19-cv-01743-N-BT   Document 9   Filed 08/28/19   Page 6 of 111   PageID 44

7. Opening case with Frisco Police Department.
8. Opening file with Lawyer with one of the centers that was given as referral by CPS
9. Taking my daughter to Children's Medical Center ER on 02/07/2019 when she complained again about severe chest pain during school time and my working hours.

I came out of hospital with in a week and went to PHP classes and ruled out that classes are not for me with in 10 days and left me on medications. While I am having medications, I started seeing adverse reactions - My urine smelling so badly, My skin getting minor burns in my feet, becoming lethargic more than what I need to be, not able to attend my daily activities by myself. I had to ween of my medications based on the adverse reactions caused by medication. I called the doctor office and I left them message for future appointment and they never addressed my call and replied my call.

If you think I am mentally sick person that cannot handle kids or any real life situations that deals with stress, people around me, I shouldn't have let go off hospital. I shouldn't have taken care of myself for two weeks before I got my back in to my life and taken appropriate steps and proper care of my kids who got injured by their dad in my 3 weeks absence in their life.

Please let me know if you need any more information related to my behavior towards my kids.

Regards
Manogna Devabhaktuni
469-978-4941

Re: Apology for misunderstanding

From:  Lee Sonne (leebsonne@gmail.com)

To:     manognadevabhaktuni@yahoo.com

Date:  Wednesday, February 27, 2019, 6:50 PM CST


Hi Manogna,

I was very surprised at reading this email. You sound very angry at Dasha and are blaming her for ruining your family life which is both unfair and untrue. I know that Dasha did not disclose anything to the hospital about you or your life and was always acting in a way that she thought was in your best interest. She has been a true friend to you and sacrificed hours and hours of her time that could have been spent with her own family to be there to support you and serve you in any way that she could. I think you owe her an apology.

Thanks,
Bishop Sonne

Sent from my iPhone


On Feb 27, 2019, at 5:22 PM, manogna devabhaktuni <manognadevabhaktuni@yahoo.com> wrote:


Thank you Sister Dasha, but like I told you an apology won't fix my life which I was forming with so moral and so many dreams for me, for my husband and for my kids.

I don't know why I was ended up in ER first thing in the place instead of me going to a out patient counselor like I committed suicide (or) have an heart attack and also I don't know why a social worker has to be involved like I am a prostitute (or) drug dealer (or) Alcohol Abuser.

FYI - MY HUSBAND ALREADY KNOW EACH AND EVERY SINGLE NITTY GRITTY DETAILS OF MY WHOLE LIFE FROM THE DAY THAT I WAS BORN IN THIS UNIVERSE. I NEVER ASKED ANYONE TO TELL MY HUSBAND ABOUT MY LIFE AND ALSO I AM PRETTY SURE YOU NEVER APPRAOCHED HIM

AS PER ER RECORDS I SHOULD HAVE BEEN DISCHARGED ON THE SAME DAY BUT THE WHOLE LIFE OF MY FAMILY HAS BEEN MESSED UP.

YOU KNOW ME BETTER, I NEVER TOLD MY LIFE TO ANYONE EXCEPT TO YOU. I NEVER ASKED YOU TO INVOLVE A SOCIAL WORKER TO ANNOUNCE MY DEATH AFTER I DIE IN HOSPITAL AS SUICIDIAL CASE.

I WANTED TO LET YOU KNOW I DIDN'T WAKE UP UNTIL MONDAY EVENING 8:00 PM ONCE I HAVE BEEN SEDUCED WITH DRUGS AND POISINED FOOD TO MAKE MY SUBCONSICOUS MIND TALK ABOUT MY PERSONAL LIFE.

BEING AS A FRIEND YOU SHOULD NEVER LET TOUCH MY PERSONAL LIFE AND MY FAMILY.

I HOPE YOU WILL UNDERSTAND THE PAIN ANY LIVING BEING GOES THROUGH WHEN THEY ARE BEING CALLED BITCH THOUGH THAT IS NOT THE TRUTH

ONE OF THE DIAGNOSIS GIVEN ON THE MRN RECORDS IS MY LIFE.

PLEASE I DON'T LIKE PEOPLE PLAYING WITH MY FEELINGS AND USING ME AND PUTTING ME DOWN. I HATE TO HEAR WORD SORRY OR APOLOGIZE WHICH DOESN'T GIVE ANY BENEFIT FOR THE PAIN I HAVE BEEN GOING THROUGH.

- MANOGNA
On Wednesday, February 27, 2019, 05:29:16 AM CST, Dasha Barton <dashabarton@yahoo.com> wrote:


Manogna-

   I wanted to apology for any misunderstanding. I am so sorry if there was any confusion in your medical record. I Honestly brought you to the hospital for help and I did not release any of your personal life when we went to the hospital.  I think the record is referring to when you were speaking to the social worker via video conference in the Emergency Room and you wanted to tell her your life story with your husband and she was having difficulty understanding what you were saying so I was helping her to understand your words.  I pray for peace with your personal life.

- Dasha

## Re: Family Team Meeting

From: manogna devabhaktuni (manognadevabhaktuni@yahoo.com)

To:   Chantell.Griffin@dfps.state.tx.us

Date: Thursday, February 21, 2019, 2:35 PM CST


Thank you Miss Chantell.

As there were no court orders filed or placed against me as criminal that cannot not to have kids with me without anyone's supervision I am getting my kids tomorrow evening and I already notified kids father. To remind you I am the one who came to CPS seeking your help to protect my kids and kept being harassed multiple times by CPS by taking away my kids from me instead of being helped.

**I am not ready to let them go to any other places (or) any other people except me growing them up myself as their biological mom and I have each and every single right on them being their mom and American Citizen.**

FYI - I had 5 miscarriages to have my kids. I hope you will know and can understand how it will be for having kids after 5 miscarriages.

**Regarding meeting with Mr. Mohan** --- I am not sure why do we have to go to Family Team meeting which you never mentioned to me and especially when **Mr. Mohan** is not part of my life any more except family business relationship with kids. But I am ready to accept your request as I need to know the exact truth about what happened to my kids during the period of my absence because of my hospitalization which is not even legal diagnosis done on me

Also please find the attached proof of my discharge sheet. The discharge sheet that was handed over to me or any of the doctor that I visited during my hospitalization never mentioned I need to have someone at my home 24 X 7 to monitor me and my behavior with kids.

Also there were no rules mentioned how long the medications needs to be taken. I had to wean off for various reasons and most important reason is my kids got affected by Mr. Mohan when he is guardian when I was in hospital.

Regards
Manogna Devabhaktuni


On Wednesday, February 20, 2019 12:16:33 PM CST, Griffin,Chantell (DFPS) <Chantell.Griffin@dfps.state.tx.us> wrote:


Manognade


We are in the process of scheduling a family Team meeting there will be a lady by the name of Monica reaching out to you. The  meeting will include your ex-husband and yourself and whatever family support you have and will be conducted at one of our  CPS offices. This meeting is to address once again the concerns the department has and what is expected in this investigation.

Case 3:19-cv-01743-N-BT   Document 9   Filed 08/28/19   Page 12 of 111   PageID 50

Chantell Griffin, MS
CPS Investigator I, Region 3
Texas Department of Family & Protective Services
1712 W. Frankford Ste 100 Carrollton, Texas 75007
(682)-478-7385 -Cell
(972)-820-1900- office
512-276-3545-Fax

Discharge summary sheet.pdf
607.7kB

Need more clear explanation why I need to send my kids to their father place

From:  manogna devabhaktuni (manognadevabhaktuni@yahoo.com)

To:  chantell.griffin@dfps.state.tx.us

Date:  Tuesday, February 19, 2019, 4:08 PM CST

Ms. Chantell,

I know I cannot file (or) open case against CPS but I feel like CPS is harassing me and threatening me to take away my kids from me instead of helping me. I do know I don't have authority to go against CPS decision but being their mom who opened the case by myself I need to know exactly what's happening to my case.

I know you called me by yourself soon after I opened the case 10 days back and you asked me to go to location to meet you and gathered the information from you like it is new case in your hand.

Every time while we are discussing over the phone, there are multiple reasons that you are using and forcing me to send my kids to their father place during the period of my custody which is against to the court rules and orders that were already placed in my final divorce decree on 02/19/2016.

Until today you never mentioned to me there is another case opened against to me (or) there is no court order I received from anyone saying that I need to surrender my kids to kids father. You are telling me you cannot provide any information which is missing leading me. Being as American citizen and biological mom of my kids I need to know what exactly is happening in my case.

Friday also you called me and kind of threatened me saying that if I won't send kids to their father place you will send me to court and to Jail like I am criminal and I am trying to cause injury to my kids which I am not aware of any file (or) case open against to me.

As per divorce decree I should have kids this week with me and today morning you called me and threatened me saying that you don't have to provide any reason why I have to let go of my kids to their fathers place using my medical conditions that has been ruled out and completed. After I was discharged by doctor and with his agreement only I got my kids back and you ended up forcing me I am not eligible mom without providing any proof to me.

Please let me know what is exact reason for me to go against my divorce decree and send my kids in my custody period

Regards
Manogna Devabhaktuni



COMMISSIONER

H. L. WHITMAN JR.

**TEXAS DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES**

_REQUEST AND AUTHORIZATION FOR RELEASE OF INFORMATION_
INFORMATION TO BE RELEASED TO AND/OR EXCHANGED WITH IDENTIFIED PERSONS ON THIS FORM  OR ANY PROPERLY IDENTIFIED DFPS EMPLOYEE
TEXAS DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES

_D. MANOGWA_ (DOB: _01/04/1979_ SSN: _____ ),
_Parent, hereby authorizes and requests the release of confidential information regarding the educational, medical, psychiatric, psychological, substance abuse history, treatment, and level of participation of the items indicated below along with any other information requested with regard to myself and/or my child(ren):
This authorization covers information relating to all time periods unless specific time periods are listed below_

| NAME | D.O.B. | Social Security Number | | NAME | D.O.B. | Social Security Number |
|------|--------|------------------------|--|------|--------|------------------------|
|      |        |                        |  |      |        |                        |
|      |        |                        |  |      |        |                        |
|      |        |                        |  |      |        |                        |
|      |        |                        |  |      |        |                        |

PURPOSE FOR RELEASE/EXCHANGE OF INFORMATION:

_____ INVESTIGATION WITH CPS                    THE ABOVE NAMED CHILD IS IN THE CARE AND
                                                CUSTODY OF THE STATE OF TEXAS

_INFORMATION TO BE RELEASED/EXCHANGED:_

**MEDICAL**
PHYSICIAN(S)/HOSPITAL(S)
_ASH RAF HUSNAIN_

_____ MEDICAL RECORDS
_____ RECOMMENDATIONS
_____ EVALUATION(S)/
_____ DIAGNOSIS
_____ MEDICATION PRESCRIBED
_____ ER/CLINIC RECORDS

**SUBSTANCE ABUSE**
_____ TREATMENT PROGRAM(S)

_____ DRUG TEST RESULTS/HISTORY
_____ PROGRESS/ATTENDANCE
_____ WILLINGNESS AND ABILITY
      TO REMAIN DRUG AND/OR
      ALCOHOL FREE
_____ LEVEL OF PARTICIPATION

**PSYCHIATRIC**
PHYSICIAN(S)/HOSPITAL(S)
_TEXAS HEALTH_
_SPRINGWOOD_
_BEHAVIORAL_
_HEALTH (MSD)_
_TAL HER_

_____ INDIVIDUAL COUNSELING
_____ FAMILY COUNSELING
_____ DIAGNOSIS/
_____ PSYCHIATRIC RECORDS
_____ MEDICATION PRESCRIBED
_____ EVALUATION (S)

OTHER REFERENCES/RELATIVE(S)
_FULL DISCLOSURE OF CPS_
_INVESTIGATION TO BE_
_RELEASED TO/RELATIONSHIP:_

_ATTORNEY:_

_PROBATION/PAROLE OFFICER:_

**DOMESTIC VIOLENCE**
_____ HOPE'S DOOR
_____ FRIEND'S OF THE FAMILY
_____ CITY HOUSE
_____ FAMILY TREE COUNSELING
_____ LEVEL OF PARTICIPATION
_____ INDIVIDUAL COUNSELING
_____ SOCIAL HISTORY
_____ GROUP COUNSELING

**DENTAL**
_____ DENTIST(S)/CLINIC(S)/
_____ DENTAL RECORDS

_____ COUNSELOR(S)/THERAPIST(S)

_____ RELATIVE(S)

_____ OTHER REFERENCES

I acknowledge the following:
* Unless otherwise revoked, I understand this authorization will expire one (1) year from the date this from is signed.
**HIPPA Notices**
* You have the right to refuse to sign this authorization. DFPS will not withhold any benefit if you refuse to sign this authorization. You will receive a copy of this signed authorization.
* If you authorize disclosure of information the potential exists for the information described in this authorization to be re-disclosed by the recipient. If the information is re-disclosed, then it may no longer be protected by medical privacy laws.
* If you are signing as a parent/guardian/managing conservator of a minor or as a guardian of the person of an adult, the information disclosed/used/received may contain references about you and your family.
* You have the right to revoke this authorization. To revoke this authorization, you must deliver a written statement, signed by you, to the organization or facility where you gave your authorization (identified above), which provides the date and purpose of this authorization and your intent to revoke it. Your revocation will be effective the date it is received by the organization/facility, except to the extent that the organization/facility has already relied upon your authorization to use or disclose your health information.

By my signature below, I hereby authorize the disclosure as set forth above, of my protected health information records, and release the holders of such information from all legal liability for the disclosure of such information, in accordance with the provisions of the authorization. A copy or facsimile of the authorization is valid as an original. This authorization consists of one (1) page.

_D. Manogwa_                                          _02/05/2018_
SIGNATURE                                    DATE

# HCA

May 10, 2019

To Whom it May Concern:

This is to confirm that MARIOGINA LEVA BLM TEMI was under the care of STEVE ROCHE, MD for treatment at out In A scheduled medic... s to spital from 04/22/19 to ... of hospi... she ... ill be cleared back to continued at... ... ... atter discharge without restrictions.

Nicoby Collins LMSW
Triage Specialist

*7808 Clodus Fields Dr. Dallas, TX 75251 (972) 991-8800*

Account Info ▼    Go

Sent

Delete    Actions ▼    Apply

Mature Qualit    Tender Dating Site    AD

**Fw: Do not contact me again**



manogna devabhaktuni <manognadevabhakt
uni@yahoo.com>
To:
ashley.frederick-gaines@dfps.state.tx.us <ashl
ey.frederick-gaines@dfps.state.tx.us>

Hi Ashley,

Below is the one of the email that Dasha Barton sent to my office
email and personal email Even though I never sent email to her
after 3/3 or any of the threatening emails to her.

FYI - I am not sure how she got my office email address which is
very official and professional email address for this kind of
emails. Based on the two emails that I am sending you its a true
practical proof that she is a criminal who took me to ER forcefully
by herself without any of my written consent (or)verbal agreement
with her

I have some of the text messages that I can show you which are
proof that she is a true criminal in filing me in hospital on
01/06/2019. Please let me know if you need these too I can
forward them to you.

Regards
Manogna Devabhaktuni
469-978-4941

----- Forwarded Message -----
**From:** Dasha Barton <dashabarton@yahoo.com>
**To:** "mdevabhaktun@ft.newyorklife.com"
<mdevabhaktun@ft.newyorklife.com>; "manognadevabhaktuni@yahoo.com"
<manognadevabhaktuni@yahoo.com>
**Sent:** Thursday, March 7, 2019 09:46:32 AM CST
**Subject:** Do not contact me again

Manogna -

Do not contact me again. I have given copies of emails to the Frisco Police
Department. If you continue, harassment charges will be filed.

- Dasha

Delete    Actions ▼    Apply



More on-time deliveries than the
competition.

GET STARTED

Search your mailbox

Account Info ▼   Go

Sent

Delete   Actions ▼   Apply

| | |
|---|---|
| Inbox | 66 |
| Drafts | |
| Sent | |
| Archive | |
| Spam | |
| Trash | |
| Folders | |
| + New folder | |
| File | |

Mature Qualit   No Charge to Brow   AD

## Choking Trayee to get hurt because of me visting them in the park

**manogna devabhaktuni** <manognadevabhaktuni@yahoo.com>
To:
ashley.frederick-gaines@dfps.state.tx.us <ashley.frederick-gaines@dfps.state.tx.us>,
mohanraavi@yahoo.com <michanraavi@yahoo.com>

### Good Afternoon Ashley

I have to let you know my daughter expressed me indirectly to me when I was playing with them that Mr.Mohan is hurting her again like he was doing previously. I woke up at 11:00 PM in the night choking because of the dream I got from her asking me to help her when Mohan is trying to choke her throat to have sex with her when she is in the middle of the sleep which is very weird.

I called him today to check on her and he didn't let me talk. Please help her to sleep happily and stay happily.

Regards
Manogna Devabhaktuni
469-978-4941


TERM LIFE INSURANCE

RATES START AT
$11.67/month

Delete   Actions ▼   Apply

Mohan

You are shameless people -
You blamed my expired dad,
his father & his father

You all are pathetic pieces of
shit that somehow got lucky

Iam not disconnecting the
phone today. You have time to
go to a shop & get a new
connection this evening after I
pick up Kushal

Mohan

On top of it – I can see that you
are making strategies to
mitigate my efforts in taking
kids away from you.

Now ur family will come into
picture now after everything is
ruined & you all with bad mouth
me around town.

I have seen how you guys
operate



Mohan

No you need help/guidance.

But Why did you call your
brother of all the days?
Yesterday evening?

Mohan

He says yes to me also at home



Mohan

I don't fucking know what to do either & why he is doing all this stuff

I am just wasting money & I cannot take one kid out at a time - My Fucking life & I don't know what Iam doing here

Thanks for the suggestion.
I know how to deal with a small kid.
Iam talking here in length coz all the measures are failing

I'm cancelling the 2nd session of swimming for both the kids

Mohan K

Kids don't need to suffer while you & me are fucking fighting; Iam making sure no matter which house they are in - to make sure they are not left behind

If you want to spoil & kill their lives too - Do so & I will make sure what's a angry dad is supposed to do when he sees some one meddling with the kids life



I technically don't have to pay
50%

Re: Need answers for the attached questions

From: Frisco Stake President (friscostakepresident@gmail.com)

To:   manognadevabhaktuni@yahoo.com

Cc:   leebsonne@gmail.com; tgfrederickson@gmail.com

Date:  Tuesday, April 30, 2019, 7:53 PM CDT


Sister Devabhaktuni,

Let me take just a second to share my thoughts and feelings based on what you noted below, as well as in your other email sent this evening...

- you are right that I have offered soothing words and tried to help in any way I can

- you are right that I don't believe Sister Barton did any but try and help you the best that she could.  I do not believe that Sister Barton said, or believes, that you are an illegal criminal

- you are right that I said that your primary focus should be on working with the hospital and if you need to, also work with an attorney

- I did say that I would try and find a reference for you if you wanted to sue the hospital and take legal action.  I've spoke with those attorneys that I know and none of them are practicing law or able to help in this case as it's not what they specialize in and wouldn't be the best help.  I also recommended that you be looking and seeking to find legal help on your side and I wasn't sure whether I would be able to or not

- we spoke about the legal aspect of a lawsuit being very expensive and that the church would not be able to support that financially.  One of the reasons that I don't know how to find you an attorney is that there aren't funds to support such action.

I think you are a wonderful person and you've never been anything but kind and gracious in our interactions.  I'm thankful for that. We love your home and our prayers are with you each day!  I think your best course moving forward is three things:

1. to call a litigation attorney, explain to them your situation of no finances to pay for a lawsuit, and see if they will take your case anyway

2. call the medical center that is threatening you with a lawsuit and explain to them that you don't have to money to pay right now.  My experience tells me that they will work with you to find a solution.  I can't call for you or help in this because they need to talk to you about this directly

3. Focus as much time as you can on your job and focus on earning income to support you and your family - maybe you will be able to save enough money to even get a legal consultation at some point soon.

Kris Katseanes

On Apr 30, 2019, at 5:38 PM, manogna devabhaktuni <manognadevabhaktuni@yahoo.com> wrote:

> Good Evening President
>
> I have sent generic questions to get answered from Dasha Barton and almost 10 days back you called me and told me to let go off those questions saying that she did for my own good which doesn't make sense to me because as per Dasha Barton I am illegal criminal living in the united states.
>
> I hope you do remember all the true story about me, my family and my life that I shared with you trusting you that you will do justification as it needs top priority actions on it.

You never sent me any reply to any of my emails and also none of the lawyer names.

I waited on you for more than one month and I am escalating this to the person in UTAH temple and also the news media in temple Utah that I already contacted before I started talking to you.

Being as normal human being I do need justification as I lost lot of happy life, my family and my job because of Dasha Barton.

FYI - She already agreed that she is part of the game on 01/06/2019 and I already forwarded you that email and also you received a threatening email from her which indicated clearly that she is threatening me which is totally against to the rules of united states and also god


Regards
Manogna Devabhaktuni

On Wednesday, April 17, 2019 12:37:26 PM CDT, manogna devabhaktuni <manognadevabhaktuni@yahoo.com> wrote:


Good Afternoon President

I figured it out it has been a month after I sent you questionnaire to ask Dasha Barton about my hospitalization on 01/06/2019. Yesterday I got call from medical claims that I will be getting sued if I won't get them paid on time which is very rare case and I am not sure what's happening with the medical center as I saw I got medical bills from various centers which is very odd

I saw they did kept me in Mobile unit for more than 8 hours for unnecessary reason and I need to know why they had to keep in mobile unit when Dasha Barton kept in ER and why they couldn't discharge me on the same day

Please let me know when you will be sending me the information from Dasha Barton as I am getting ready to start my work soon and also get my kids to my place.

Regards
Manogna Devabhaktuni
469-978-4941

On Sunday, March 17, 2019 08:13:49 PM CDT, Frisco Stake President <friscostakepresident@gmail.com> wrote:


Sister Devabhaktuni,

Thank you for sending this over as requested. I've always learned that it's easier to approach things little by little, and as discussed this morning we can start to divide these up into questions that we 'need to know' the answer to and questions that we "would like to know' the answer to.

Would it be fair for me to have you take the whole list you sent and select 20 that you feel are the most important and are absolutely 'need to know' questions?

We can then go from there after trying to get the first 20...this would give us a manageable place to start.

Thanks, Kris

On Mar 17, 2019, at 7:23 PM, manogna devabhaktuni <manognadevabhaktuni@yahoo.com> wrote:



44566

**Arthur Murray Dance Studio**
3001 W. Spring Creek Parkway
Plano, TX 75023

BY:

THIS IS YOUR RECEIPT

| RECEIPT NUMBER | DATE | STUDENT NAME | COURSE | AMOUNT OF PAYMENT | BALANCE DUE | TYPE |
|---|---|---|---|---|---|---|
| 44566 | 5.6.16 | Devilokitan, Monoyua | KSD 116 | 405 | | MC |

| RECEIPT NUMBER | DATE | STUDENT NAME | COURSE | AMOUNT OF PAYMENT | BALANCE DUE | TYPE |
|---|---|---|---|---|---|---|
| 44565 | 5-6-16 | Donathan Manana | Unlimited | $150 | | MC |

**THIS IS YOUR RECEIPT**

*Arthur Murray*

44565

**Arthur Murray Dance Studio**
3001 W. Spring Creek Parkway
Plano, TX 75023

BY:



| RECEIPT NUMBER | DATE | STUDENT NAME | COURSE | AMOUNT OF PAYMENT | BALANCE DUE | TYPE |
|---|---|---|---|---|---|---|

44567

**Arthur Murray Dance Studio**
3001 W. Spring Creek Parkway
Plano, TX 75023

THIS IS YOUR RECEIPT

BY:

/ /

SAO Hotline 19-2775

From:  SAO Intake (saointake@sao.texas.gov)

To:    manognadevabhaktuni@yahoo.com

Date:  Wednesday, August 28, 2019, 10:32 AM CDT


TO: Manogna Devabhaktuni

The Texas State Auditor's Office has the authority to conduct audits and investigations related to the use of Texas state funds involving state agencies, and institutions of higher education.

This return email is an acknowledgement of the SAO's receipt of your submitted complaint.

You may consider contacting your local police department to report your concerns.

Regards,

Texas State Auditor's Office
Investigations and Audit Support (IAS)

-----Original Message-----
From: System-Generated Email <webmaster@sao.texas.gov>
Sent: Monday, August 26, 2019 5:51 PM
To: Hotline Intake <HotlineIntake@sao.texas.gov>
Subject: Fraud, Waste and/or Abuse Hotline

The following fraud, waste, or abuse report was received

Control Number: 192775

Name: Manogna Devabhaktuni

Phone: 4699784941

Email: manognadevabhaktuni@yahoo.com

Agency/University: 999 - All State Agencies

Organization/Company/Individual: Mohan Kumar Ravi, Arthur Murray Dance Studio in Plano, Kelson Fischer/Kelson Brooks, Fio Johnson/Fiona I am the persian Medium Pschyic on AvidAdvice.com, New York Life, Hospitals, CPS, Frisco Police Department, LDS Chruch in the Colony, Dasha Barton, Lee Sonnie, Kris Katseans, Fred, Allen elementary School in Frisco, Primrose School at lakehill Frisco, Apple, Andriod, Gmail and Yahoo mail, Kroger that is in the corner of Lebanon and Legacy interesection, Lebanon Ridge apartments, Chilia Martin, Anita Lal, ICE Team, Home Land Security, IRS, DFPS, Sexaul Sites like www.tube8.com

I became citizen on 12/10/2018 and Kelson J Fischer/ Arthur Murray Studio in Dallas along with Mohan Kumar Ravi started taking revenge on me as Mohan Kumar Ravi kept harassing me since September 2015 because of me divorcing him based on his physical, mental and sexual Harassment (which he killed me many times by hitting me pretty badly and also by dropping me on the roads many times on me by scaring me lot) since 07/2002 once he got engaged to me because of my parents without my interest and consent. I called cops on him in Sep 2015 soon after he came to know I filed the divorce and he went physical on me. I couldn't tell them properly as my kids were crying and don't want them to feel bad as they were almost 4 years and 2 years old during that time and they are not in stage to understand what exactly happened.

Other Law Enforcement Agencies Notified: DPS, Other Law Enforcement Agency - National Trafficking, United States District Court of Northern District of Texas, IRS, ICE Team, Crime Investigation Team

This message contains information which may be an audit working paper and/or may be confidential, privileged, or otherwise exempt from open records.  Unless you are the addressee (or authorized to receive for the addressee), you may

not use, copy, or disclose to anyone the message or any information contained in the message.  If you have received the message in error, please advise the sender by reply e-mail and delete the message.  Please contact the State Auditor's Office at publicinformation@sao.texas.gov before releasing this document in response to an open records request.

Case 3:19-cv-0174‑3-N-BL   Document 9   Filed 08/28/19   Page 31 of 111   PageID 69

# Your claims up close

## Claim for Manogna (self)   Provider: Michael A Deck (In-Network)

| Claim ID: EG358Y73Q00<br>Received on 1/30/19 | Amount billed | Member rate | Not payable by plan (Remarks) ❗ | Applied to deductible | Your copay | Amount remaining | Plan pays | Your coinsurance | You may owe<br>C+D+E+H=I |
|---|---|---|---|---|---|---|---|---|---|
| | A | B | C | D | E | F | G | H | I |
| GENERAL HEALTH PANEL 80050 on 1/6/19 | 38.00 | 26.60 | (1) | | | 26.60 | 23.94 (90%) | 2.66 (10%) | 2.66 |
| MEDICAL SERVICES 84703 on 1/6/19 | 16.90 | 11.83 | | | | 11.83 | 10.65 (90%) | 1.18 (10%) | 1.18 |
| MEDICAL SERVICES 80307 on 1/6/19 | 49.00 | | 49.00 (2) | | | | | | |
| Refer to Remarks Section | | | (3) | | | | | | |
| Totals: | 103.90 | 38.43 | 49.00 | | | 38.43 | 34.59 | 3.84 | **$3.84** |

❗ You can find all numbered claim remarks in 'Your Claim Remarks' section.

## Your Claim Remarks
### General Remarks:

(1) The payment for this service(s) has been made based on the more comprehensive procedure performed on the same date of service. V68

(2) Your benefit plan provides coverage for charges that are reasonable and appropriate. The charge for this service does not meet this requirement because this service is considered mutually exclusive to another procedure performed on the same date of service or within the date span that applies to the procedure. You are not responsible for this amount. [Z07]

(3) Your provider may have sent diagnosis codes with your claim. You may obtain these codes and their meanings by contacting us at the number listed at the top of the first page. We will also provide your treatment codes and their meanings, if they do not appear on this statement. If you have questions about your diagnosis or your treatment, please contact your provider. [H63]

# Your benefit balances to date for 1/1/19 to 12/31/19

| Individual Balances | Annual limit | Amount used | Amount remaining |
|---|---|---|---|
| **Manogna (self)** | | | |
| Medical In Network Deductible | $1,600.00 | $1,600.00 | $0.00 |
| Medical In Network Out of Pocket Maximum | $4,600.00 | $2,688.38 | $1,911.62 |
| Medical Out of Network Deductible | $3,200.00 | $0.00 | $3,200.00 |
| Medical Out of Network Out of Pocket Maximum | $9,200.00 | $0.00 | $9,200.00 |

## A complete list of your benefit balances and plan limits can be found on your secure member website.

> The accumulated amounts towards your medical plan may have been adjusted due to claims not paid by us.

20180202 007028   J280EVBD   20180200800 J502   Env [32,633] 4 of 5

*007028*J280EVBD*018826*

**Do you have questions? Call us free of charge at the toll-free number on the first page of this statement or on your member ID card.**

**Appeals**

**Please send your written appeal along with a copy of this entire EOB to this address:**

> Appeals Resolution Team
> PO Box 14463
> Lexington, KY 40512

If you disagree with a claim decision, you can ask us to review it. The process is called an appeal. You or someone you name to act for you, your authorized representative, can ask for this review. Call our Member Services Department using the telephone number displayed on the member ID card or send your written request to the above address.

Your request should include:

- Name, date of birth, and address
- Member ID number
- Group ID and name of your group, usually your employer
- Any other claim documents or records or other facts you would like us to consider. This could be new details that you did not give us the first time.

You have the right to look at the relevant documents we used to make our decision on your claim. A copy of the specific rule, guideline, or protocol relied upon in the adverse benefit determination will be provided free of charge upon request by you or your authorized representative. You can ask for these (free of charge) by calling or writing us. You have 180 days from the time you get this explanation to appeal. You might even have more time if your plan brochure or Summary Plan Description says so.

**When to expect a decision**

- If your plan allows for one appeal we'll let you know our decision 60 days after we get your appeal request. Some states might require a different time period.
- Your plan may allow two appeals. In that case, we will let you know our first decision 30 days from the date we receive your appeal request, unless your state gives us a different amount of time. If you don't agree with that first decision, you have a second chance to appeal.

**What happens next**

If you appeal, we will review our decision and provide you with a written determination. If we continue to deny the payment, coverage, or service requested or you do not receive a timely decision, you may be able to request an external review of your claim by an independent third party, who will review the denial and issue a final decision.

**Employer sponsored plans**

If you don't agree with our final decision, you may have the right to bring a lawsuit under Section 502(a) of a law called ERISA. Check with your employee benefits coordinator to see which appeals process your plan allows and if your plan is governed by ERISA.

**Coordination of benefits**

If you are covered by more than one health benefit plan, you should file all your claims with each plan.

**Your privacy**

Your health information is confidential. Any information you give us will be kept private. When contacting us about this notice or for help with other questions, please be prepared to provide your member name, member ID, and date of birth.

**Prevent fraud**

If you suspect fraud or abuse involving these services or would like to report other healthcare fraud-related issues, please call the toll-free hotline at 1-800-338-6361 or e-mail us at aetnasiu@aetna.com.

**Resources available to help you**

Need help understanding this notice or our decision? **Call us free of charge at the toll-free number on your medical ID card.** There are also other resources available to help you. Most plans are now subject to health care reform law. Call us or ask your employer if your plan is subject to the law. If it is, you can also contact the Employee Benefits Security Administration at 1-866-444-EBSA (3272) for help, if your health plan is provided by your employer. In addition, a Consumer Assistance Program may be able to assist you.

Texas Department of Insurance Consumer Protection, Mail Code 111-1A, 333 Guadalupe, PO Box 149091, Austin TX 78714-9091
Tel: 800-252-3439, Email: consumerprotection@tdi.texas.gov, Web: www.texashealthoptions.com

# Your claims up close

## Claim for Manogna (self)   Provider: Texas Health Presbyterian (In-Network)

| Claim ID: E7JL7W3FZ00 Received on 1/28/19 | Amount billed | Member rate | Not payable by plan (Remarks) | Applied to deductible | Your copay | Amount remaining | Plan pays | Your coinsurance | You may owe C+D+E+H=I |
|---|---|---|---|---|---|---|---|---|---|
| | A | B | C | D | E | F | G | H | I |
| COLLECTION OF VENOUS BLOOD 36415 on 1/6/19 | 30.75 | | 30.75 (1) (2) | | | | | | |
| COMPREHEN METABOLIC PANEL 80053 on 1/6/19 | 536.25 | 382.88 | | | | 382.88 | 344.59 (90%) | 38.29 (10%) | 38.29 |
| MEDICAL SERVICES 84703 on 1/6/19 | 256.00 | 182.78 | | | | 182.78 | 164.50 (90%) | 18.28 (10%) | 18.28 |
| ASSAY THYROID STIM HORMONE 84443 on 1/6/19 | 443.50 | 316.66 | | | | 316.66 | 284.99 (90%) | 31.67 (10%) | 31.67 |
| MEDICAL SERVICES 80307 on 1/6/19 | 268.00 | 191.35 | | | | 191.35 | 172.21 (90%) | 19.14 (10%) | 19.14 |
| MEDICAL SERVICES G0480 on 1/6/19 | 529.50 | 378.06 | | | | 378.06 | 340.25 (90%) | 37.81 (10%) | 37.81 |
| AUTOMAT HEMOGRAM-COMPLET DIF 85025 on 1/6/19 | 176.75 | 126.20 | | | | 126.20 | 113.58 (90%) | 12.62 (10%) | 12.62 |
| CAT SCAN OF HEAD OR BRAIN 70450 on 1/6/19 | 2,655.75 | 1,896.21 | | | | 1,896.21 | 1,706.59 (90%) | 189.62 (10%) | 189.62 |
| EMERGENCY SERVICES 99285 on 1/6/19 | 2,030.50 | 1,449.78 | | | | 1,449.78 | 1,304.80 (90%) | 144.98 (10%) | 144.98 |
| Refer to Remarks Section | | | (3) | | | | | | |
| Totals: | 6,927.00 | 4,923.92 | 30.75 | | | 4,923.92 | 4,431.51 | 492.41 | **$492.41** |

You can find all numbered claim remarks in 'Your Claim Remarks' section.

## Your Claim Remarks
### General Remarks:

(1) You do not have to pay this. We consider payment for this service to be part of the payment for other services. It is not paid separately. [780]

(2) The payment for this service is included in the contracted and/or case rate paid to the provider. You are not responsible for this amount; except for applicable copay, deductible, coinsurance. [V64]

(3) Your provider may have sent diagnosis codes with your claim. You may obtain these codes and their meanings by contacting us at the number listed at the top of the first page. We will also provide your treatment codes and their meanings, if they do not appear on this statement. If you have questions about your diagnosis or your treatment, please contact your provider. [H63]

# Your benefit balances to date for 1/1/19 to 12/31/19

| Individual Balances | Annual limit | Amount used | Amount remaining |
|---|---|---|---|
| **Manogna (self)** | | | |
| Medical In Network Deductible | $1,600.00 | $1,600.00 | $0.00 |
| Medical In Network Out of Pocket Maximum | $4,600.00 | $2,688.38 | $1,911.62 |
| Medical Out of Network Deductible | $3,200.00 | $0.00 | $3,200.00 |
| Medical Out of Network Out of Pocket Maximum | $9,200.00 | $0.00 | $9,200.00 |

## A complete list of your benefit balances and plan limits can be found on your secure member website.

The accumulated amounts towards your medical plan may have been adjusted due to claims not paid by us.

**aetna**

Aetna Life Insurance Company
P.O. Box 981106
EL PASO, TX 79998-1106

Statement date: February 5, 2019

Member: MANOGNA DEVABHAKTUNI
Member ID: W245790089
Group #: 0865288-53-001 M P1$ZN0
Group name: NEW YORK LIFE INSURANCE
COMPANY - EMPLOYEES

MANOGNA DEVABHAKTUNI
2355 LEBANON ROAD #2107
FRISCO TX 75034-6292

QUESTIONS? Contact us at aetna.com
1-877-440-4708
Or write to the address shown above.

# Explanation of Benefits (EOB) - This is not a bill

This statement is called your EOB. It shows how much you may owe, the amount that was billed, and your member rate. It also shows the amount you saved and what your plan paid. Look at this statement carefully and make sure it is correct. If you do owe anything, you will receive a bill from your doctor or health care provider(s). If you have access to the secure member website, you can change your delivery preference, view, print or download your EOBs online anytime.

## Track your health care costs

**$16.47**
**Amount you saved**

Going to a doctor or hospital in the network saves you money. That's because we have arranged discounted rates with these providers. The online provider directory can help you find a doctor or other health care professional. Just go to **www.aetna.com**.

**$0.00** (In-network)
**Amount you have left to meet deductible**

| | |
|---|---|
| Annual deductible | $1,600.00 |
| Deductible used | - $1,600.00 |
| Deductible remaining | $0.00 |

## A guide to key terms

| Term | This means | Your totals |
|---|---|---|
| **Amount billed:** | The amount your provider charged for services. | **$103.90** |
| **Member rate:** | This is the health plan covered amount which may reflect a health plan discount. This may be referred to as the allowed amount or negotiated rate. | **$38.43** |
| ⚠ **Pending or not payable:** | Charges that are either not covered or need more review by us. Read 'Your Claim Remarks' to learn more. | **$49.00** |
| **Deductible:** | The amount you pay for covered services before your plan starts to pay. | **$0.00** |
| **Coinsurance:** | When you pay part of the bill and we pay part of the bill. This is the out-of-pocket amount that you may owe. | **$3.84** |
| **Copay:** | A fixed dollar amount you pay when you visit a doctor or other health care provider. | **$0.00** |

### Did you know?

If you think the ER is the only place that can handle your health issues, think again! Urgent care centers can sometimes offer care for other serious, non-life threatening medical matters and also plenty of other services.

## Your payment summary

| | | Your plan paid | | | You owe or already paid |
|---|---|---|---|---|---|
| **Patient** | **Provider** | **Amount** | **Sent to** | **Send date** | **Amount** |
| Manogna (self) | Michael A Deck | $34.59 | Michael A Deck | 2/11/19 | $3.84 |
| **Total:** | | **$34.59** | | | **$3.84** |

# FRISCO POLICE DEPARTMENT
## VOLUNTARY STATEMENT (NOT UNDER ARREST)

CS# 1906180︀2

I, DEVABHAKTUNI MANOGNA, am not under arrest for, nor am I being detained for any criminal offenses concerning the events I am about to make known to ___me___. Without being accused of or questioned about any criminal offenses regarding the facts I am about to state, I volunteer the following information of my own free will for whatever purposes it may serve.

Address: 2355 LEBANON RD, # 2107, FRISCO, TEXAS - 75034

Race: INDIAN Sex: F Date of birth: 07/06/1979 Age: 39 Email address: manogna.devabhaktuni@yahoo

Home phone number: _____ Work phone number: _____ Cell phone number: 469-978-7941

Drivers License Number: 20770231 State: TX

469 - 344 - 1276

Emergency Contact: ALPS - ASHLEY FREDERICK GAINES

(Tell your story using as much detail as possible, using names, dates, times, locations, etc if known. Be sure to describe what happened, how it happened, where it happened, when it happened, who did it and why, & who was there and who witnessed it.)

2: LOST CITIZENSHIP CARD FROM THE LIVING APARTMENT
AND IT HAPPENED ON 03/03/2019 - STOLEN BY A THIEF

— BROKE AND SPRAYED DRUGS BY USING DUPLICATE
APARTMENT KEY IN CURRENTLY IN LIVING APARTMENT ON
03/03/2019

— BROKE BEDROOM DOOR ON THE SAME DAY WHICH
IS 03/03/2019

— BROKE IN TO APARTMENT ON 5/30/2019 AND TOOK
AWAY THE BUNCH OF KEYS THAT HAS CAR KEY,
POSTAL KEY, APARTMENT KEY, OFFICE KEY WHICH
IS VERY ILLEGAL

— NEED SECURITY ASSISTANCE AT MY APARTMENT
AS MY APARTMENT IS BEING TRIGGERED BY SOMEONE
WITH LASER GUNS ALL THE TIME

— MY COMPUTER HAS BEEN CRASHED BY SOMEONE USING

I have read each page of this statement consisting of ___2___ page(s), each page of which bears my signature, and corrections, if any, bear my initials, and I certify that the facts contained herein are true and correct.

Dated at ___FRISCO___, this ___5___ day of ___31___, 20 19.
(location)

SIGNATURE OF WITNESS          X  D. Mallogna
                              SIGNATURE OF PERSON GIVING VOLUNTARY STATEMENT

SIGNATURE OF WITNESS

Revised 10122012

PLEASE TURN THE PAGE

I CALLED MY COMPANY NEW YORK LIFE INSURANCE

AS IT IS SECURED BY SECURE DOC SOFTWARE.

THEY MENTIONED TO ME THAT IT HAS BEEN

CRASHED IN A WAY THAT I HAVE TO BUY NEW

COMPUTER WHICH IS VERY ILLEGAL.

PLEASE NEED ASSISTANCE AS IT IS VERY

PRIORITY ONE SO IT NEED TO BE FIXED.

THIS ISSUE HAPPENED ON 05/30/2019

EARLY HOURS

# FRISCO POLICE DEPARTMENT
## VOLUNTARY STATEMENT (NOT UNDER ARREST)

CS# _19099299_

I, _DEVARAKUNI MANOGNA_ am not under arrest for, nor am I being detained for any criminal offenses concerning
the events I am about to make known to _ME_. Without being accused of or questioned about any criminal
offenses regarding the facts I am about to state, I volunteer the following information of my own free will for whatever purposes it
may serve.

Address: _2355 Lebannon Rd, #2107, FRISCO, TEXAS 75036_

Race: Asia  Sex: _F_  Date of birth: _07/06/1959_  Age: _39_  Email address: _manogna.devebhaktuni@yahoo.com_

Home phone number: _____  Work phone number: _____  Cell phone number: _469-978-4941_

Drivers License Number: _26776231_  State _Tx_

Emergency Contact: _UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS_
(Tell your story using as much detail as possible, using names, dates, times, locations, etc if known. Be sure to describe what
happened, how it happened, where it happened, when it happened, who did it and why, & who was there and who witnessed it.)

- THEFT HAPPEN AGAIN ON 08/03/2019 AND STOLE MY
PAPER WORK
- 3 MEN IN NEW YORK LIFE HARASSED ME AND INFORMED
THE MANAGEMENT. HARASSMENT HAPPENED IN LAST
7 MONTHS
- ONE OF THE THIEF TRIED TO OPEN THE DOOR
ON SATURDAY EVENING WHEN I WAS INSIDE
- CPS CHEATED ME WITHOUT PROPER PROOF. CASE
WORKER IS ASHLEY-GAINES.
- APARTMENT KEPT HARASSING ME & WENT TO EVICTION
BASE ONCE I PLUS COMPLAINT WITH POLICE DEPARTMENT
AND INFORMED THEM
- THEY DIDN'T ACCEPTED THE CHECKS THAT
CHURCH IS PAYING
— CHURCH STOPPED PAYING ME OUT OF NOW WHERE

I have read each page of this statement consisting of _____ page(s), each page of which bears my signature, and corrections,
if any, bear my initials, and I certify that the facts contained herein are true and correct.

Dated at _FRISCO_, this _29_ day of _08_, 20 _19_.
(location)

_D. Manogna_                          X _D. Manogna_
SIGNATURE OF WITNESS                    SIGNATURE OF PERSON GIVING VOLUNTARY STATEMENT

_____
SIGNATURE OF WITNESS

Revised 10122012

COMPLAINT REGISTERED AGAINST
NAME OF PRACTITIONER

LATIF OMAR

_____ PARKER ROAD   CARROLLTON   TX
STREET                              ZIP CODE

PERSON REGISTERING COMPLAINT - MUST INCLUDE FULL NAME AND ADDRESS TO BE PROCESSED
NAME   HANDGANA DEUACRLAYTONS

_____ LEBANON RD  FRISCO  TX
ADDRESS

FRISCO TX

PATIENT PERSON HARMED BY THE PRACTITIONER
NAME   HANDGANA DEUACRLAYTONS

DETAILS OF COMPLAINT
1. Describe your complaint in detail...

THERE IS A MAL PRACTICE HAPPENED ...

... IT HAPPENED SOON AFTER ...

E HOLSOIS WHICH IS VERY ILLEGAL AND ...

PEOPLE SUPPORTED IT AND STARTED ...

BY SEPARATING KIDS FROM MOM WHOM IS VERY ILLEGAL

I NOT.

2. HAVE YOU RECEIVED A SECOND OPINION FROM ANOTHER PRACTITIONER   YES    NO
IF SO, PLEASE GIVE FULL NAME AND ADDRESS

I HAVE READ THE PRECEDING, AND IT IS TRUE TO THE BEST OF MY INFORMATION AND BELIEF. IF MY COMPLAINT WOULD BE MORE APPROPRIATELY ADDRESSED BY A DIFFERENT AGENCY OR SOCIETY, I AUTHORIZE TMB TO FORWARD MY COMPLAINT TO THAT AGENCY OR SOCIETY. I UNDERSTAND THAT IF I DO NOT PROVIDE A NAME OR ADDRESS THIS COMPLAINT WILL NOT BE PROCESSED.

SIGNATURE _____   DATE _____

MAIL TO: **TEXAS MEDICAL BOARD, INVESTIGATIONS DEPARTMENT, MC-263, P.O. BOX 2018, AUSTIN, TEXAS 78768-2018.** To receive a copy of this complaint form contact CONSUMER COMPLAINT HOTLINE 1-800-201-9353.

Revised 10/5/11

# THE CITIZENS COMPLAINT PROCESS

## WHO CAN FILE A COMPLAINT?

... Physician ...
... Physician Assistant, ... Administrator ...
... Radiological Technician ...

## HOW DO I FILE A COMPLAINT?

A complaint must be in writing. You ...

## HOW ARE COMPLAINTS INVESTIGATED?

... the ... will be finished to ...
... Complaint ...
... is released from the investigation ...
complete the investigation ...

... additional ...

The investigation of your complaint should take ... no ... months ...

All ... material ... return to the ...
are ... investigative files and ... such ...
materials are confidential and privileged ... and may not be released except ... governmental ... or in litigation ...

## WILL I BE TOLD THE STATUS OF MY COMPLAINT?

You will receive a letter regarding the status of your complaint in about forty-five (45) days following the initial review process.

If a formal investigation is opened on your complaint you will receive a status letter every ninety (90) days as long as the investigation is active.

Once the investigation of your complaint is finished, ... has taken a final action, you will be ...

## WHAT ARE THE MOST COMMON COMPLAINTS WITHIN THE BOARD'S JURISDICTION?

... professional conduct, which ...

## WHAT TYPES OF COMPLAINTS FALL OUTSIDE THE BOARD'S JURISDICTION?

... The Board ...

THE COMPLAINT ... a Physician, a Physician ... a Administrator, ... a Physician Radiological Technician, ... the ... for ... proceedings ... agency ...

## WHAT ACTION CAN THE BOARD TAKE?

Disciplinary action can range from an administrative penalty to the revocation of ...

However, if there is insufficient evidence to warrant a violation of the ... Board may dismiss the complaint and close the investigation.

Additional information about the complaint and investigation process, ... and other ... please visit our website at http://www.lsbi.state.tx.us.

We can also be reached at (512) ...

*ANSWER FOR THE CASE*

**NO. E19-528J2**

| | | |
|---|---|---|
| **LEBANON RIDGE APARTMENTS** | X | **IN THE JUSTICE COURT** |
| VS | | |
| **MANOGNA DEVABHAKTUNI & ALL OCCUPANTS** | X | **PCT. TWO** |
| | X | **DENTON COUNTY, TEXAS** |

# NOTICE

ON OR **BEFORE 4:30 P.M.,** which is this court's time of closing on ___7-30___, 201_9_ you must deposit into the registry of this court, **RENT** in the amount of **$1,255.00,** in the form of **Money Order** made payable to **Court Registry**.

**FAILURE TO DEPOSIT** the required amount of rent **INTO THE REGISTRY OF THIS COURT** by the **DATE ABOVE** may result in the court issuing a **WRIT OF POSSESSION** without a hearing.

___

___ *(initial)* **I hereby acknowledge the receipt of my Notice to deposit rent into the registry of the court.**

___ *(initial)* **I understand in the event that if I fail to deposit the rent into the registry of the court that a Writ of Possession may be issued.**

Date: 07/25/2019    Signature: _____

NO. E19-528J2

| | | |
|---|---|---|
| **LEBANON RIDGE APARTMENTS**<br>VS | X | **IN THE JUSTICE COURT** |
| **MANOGNA DEVABHAKTUNI & ALL OCCUPANTS** | X | **PCT. TWO** |
| | X | **DENTON COUNTY, TEXAS** |

## RECEIPT

Date: 7/30/2019

This receipt acknowledges deposit of **$1,255.00**, as rent, into the Court Registry.

Initials of Clerk receiving payment: _MB_

**Cause No. 15-08089-431**

| | | |
|---|---|---|
| IN THE MATTER OF | § | IN THE DISTRICT COURT |
| THE MARRIAGE OF | § | |
| | § | |
| MANOGNA DEVABHAKTUNI | § | |
| AND | § | **431ST JUDICIAL DISTRICT** |
| MOHAN KUMAR RAVI | § | |
| | § | |
| AND IN THE INTEREST OF | § | |
| TRAYEE RAVI AND KUSHAL | § | |
| RAVI, CHILDREN | § | **DENTON COUNTY, TEXAS** |

FILED
AT 8:57 O'CLOCK A.M.
FEB 19 2016
DISTRICT CLERK
Denton County, Texas
BY:_____ DEPUTY

## AGREED FINAL DECREE OF DIVORCE

On this day the Court heard this case.

*Appearances*

Petitioner, MANOGNA DEVABHAKTUNI, did not appear in person but has agreed to the terms of this order as evidenced by Petitioner's signature below.

Respondent, MOHAN KUMAR RAVI, did appear in person and through his attorney of record, Rachel Duffy, and announced ready.

*Record*

The record of testimony was duly reported by the court reporter for the _____ Judicial District Court.

*Jurisdiction and Domicile*

The Court finds that the pleadings of Petitioner are in due form and contain all the allegations, information, and prerequisites required by law. The Court, after

---

Agreed Final Decree of Divorce  Page 1 of 70

receiving evidence, finds that it has jurisdiction of this case and of all the parties and that at least sixty days have elapsed since the date the suit was filed.

The Court further finds that, at the time this suit was filed, Petitioner had been a domiciliary of Texas for the preceding six-month period and a resident of the county in which this suit was filed for the preceding ninety-day period. All persons entitled to citation were properly cited.

*Jury*

A jury was waived, and questions of fact and of law were submitted to the Court.

*Agreement of Parties*

The Court finds that the parties have entered into a written agreement as contained in this decree by virtue of having approved this decree as to both form and substance. To the extent permitted by law, the parties stipulate the agreement is enforceable as a contract. The Court approves the agreement of the parties as contained in this Final Decree of Divorce.

The agreements in this Final Decree of Divorce were reached in mediation. This Final Decree of Divorce is stipulated to represent a merger of a mediated settlement agreement between the parties. To the extent there exist any differences between the mediated settlement agreement and this Final Decree of Divorce, this Final Decree of Divorce shall control in all instances.

*Divorce*

IT IS ORDERED AND DECREED that, MANOGNA DEVABHAKTUNI, Petitioner, and MOHAN KUMAR RAVI, Respondent, are divorced and that the marriage between them is dissolved on the ground of insupportability.

*Children of the Marriage*

The Court finds that Petitioner and Respondent are the parents of the following children :

Name:  Trayee Ravi (hereinafter referred to as "T.R.")

Sex:  Female

Birth date:  March 18, 2011

Name: Kushal Ravi (hereinafter referred to as "K.R.")

Sex:  Male

Birth date:  November 21, 2013

The Court finds no other children of the marriage are expected.

*Parenting Plan*

The Court finds that the provisions in this decree relating to the rights and duties of the parties with relation to the children, possession of and access to the children, child support, and optimizing the development of a close and continuing relationship between each party and the children constitute the parties' agreed parenting plan.

Agreed Final Decree of Divorce                                              Page 3 of 70

*Conservatorship*

The Court, having considered the circumstances of the parents and of the children, finds that the following orders are in the best interest of the children.

IT IS ORDERED that MOHAN KUMAR RAVI (FATHER) and MANOGNA DEVABHAKTUNI (MOTHER) are appointed Joint Managing Conservators of T.R. and K.R.

*Conservatorship and Support*

The Court, having considered the circumstances of the parents and of the children, finds that the following orders are in the best interest of the children.

IT IS ORDERED that MANOGNA DEVABHAKTUNI and MOHAN KUMAR RAVI are appointed parent joint managing conservators of the following children: T.R. and K.R.

IT IS ORDERED that, at all times, MANOGNA DEVABHAKTUNI and MOHAN KUMAR RAVI, as parent joint managing conservators, shall each have the following rights:

1. the right to receive information from any other conservator of the children concerning the health, education, and welfare of the children;

2. the right to confer with the other parent to the extent possible before making a decision concerning the health, education, and welfare of the children;



3.     the right of access to medical, dental, psychological, and educational records of the children;

4.     the right to consult with a physician, dentist, or psychologist of the children;

5.     the right to consult with school officials concerning the children's welfare and educational status, including school activities;

6.     the right to attend school activities;

7.     the right to be designated on the children's records as a person to be notified in case of an emergency;

8.     the right to consent to medical, dental, and surgical treatment during an emergency involving an immediate danger to the health and safety of the children; and

9.     the right to manage the estates of the children to the extent the estates have been created by the parent or the parent's family.

IT IS ORDERED that, at all times, MANOGNA DEVABHAKTUNI and MOHAN KUMAR RAVI, as parent joint managing conservators, shall each have the following duties:

1.     the duty to inform the other conservator of the children in a timely manner of significant information concerning the health, education, and welfare of the children; and

---



2.      the duty to inform the other conservator of the children if the conservator resides with for at least thirty days, marries, or intends to marry a person who the conservator knows is registered as a sex offender under chapter 62 of the Code of Criminal Procedure or is currently charged with an offense for which on conviction the person would be required to register under that chapter. IT IS ORDERED that this information shall be tendered in the form of a notice made as soon as practicable, but not later than the fortieth day after the date the conservator of the children begins to reside with the person or on the tenth day after the date the marriage occurs, as appropriate. IT IS ORDERED that the notice must include a description of the offense that is the basis of the person's requirement to register as a sex offender or of the offense with which the person is charged.   WARNING: A CONSERVATOR COMMITS AN OFFENSE PUNISHABLE AS A CLASS C MISDEMEANOR IF THE CONSERVATOR FAILS TO PROVIDE THIS NOTICE.

IT IS ORDERED that, during their respective periods of possession, MANOGNA DEVABHAKTUNI and MOHAN KUMAR RAVI, as parent joint managing conservators, shall each have the following rights and duties:

1.      the duty of care, control, protection, and reasonable discipline of the children;



2.      the duty to support the children, including providing the children with clothing, food, shelter, and medical and dental care not involving an invasive procedure;

3.      the right to consent for the children to medical and dental care not involving an invasive procedure; and

4.      the right to direct the moral and religious training of the children.

IT IS ORDERED that MANOGNA DEVABHAKTUNI, as a parent joint managing conservator, shall have the following rights and duty:

1.      the exclusive right to designate the primary residence of the children;

2.      the independent right to consent to medical, dental, and surgical treatment involving invasive procedures;

3.      the independent right to consent to psychiatric and psychological treatment of the children;

4.      the exclusive right to receive and give receipt for periodic payments for the support of the child and to hold or disburse these funds for the benefit of the child;

5.      the independent right to represent the children in legal action and to make other decisions of substantial legal significance concerning the children;

6.      the independent right to consent to marriage and to enlistment in the armed forces of the United States;

---

**Agreed Final Decree of Divorce**



Page 7 of 70

7. the independent right to make decisions concerning the children's education;

8. except as provided by section 264.0111 of the Texas Family Code, the independent right to the services and earnings of the children;

9. except when a guardian of the children's estates or a guardian or attorney ad litem has been appointed for the children, the independent right to act as an agent of the children in relation to the children's estates if the children's action is required by a state, the United States, or a foreign government; and

10. the independent duty to manage the estates of the children to the extent the estates have been created by community property or the joint property of the parents.

IT IS ORDERED that MOHAN KUMAR RAVI, as a parent joint managing conservator, shall have the following rights and duty:

1. the independent right to consent to medical, dental, and surgical treatment involving invasive procedures;

2. the independent right to consent to psychiatric and psychological treatment of the children;

3. the independent right to represent the children in legal action and to make other decisions of substantial legal significance concerning the children;



4.      the independent right to consent to marriage and to enlistment in the armed forces of the United States;

5.      the independent right to make decisions concerning the children's education;

6.      except as provided by section 264.0111 of the Texas Family Code, the independent right to the services and earnings of the children;

7.      except when a guardian of the children's estates or a guardian or attorney ad litem has been appointed for the children, the independent right to act as an agent of the children in relation to the children's estates if the children's action is required by a state, the United States, or a foreign government; and

8.      the independent duty to manage the estates of the children to the extent the estates have been created by community property or the joint property of the parents.

*Residency Restriction*

The Court finds that, in accordance with section 153.001 of the Texas Family Code, it is the public policy of Texas to assure that children will have frequent and continuing contact with parents who have shown the ability to act in the best interest of the child, to provide a safe, stable, and nonviolent environment for the children, and to encourage parents to share in the rights and duties of raising their children after the parents have separated or dissolved their marriage.



IT IS ORDERED that MANOGNA DEVABHAKTUNI shall have the exclusive right to designate the children's primary residence within Frisco Independent School District, Coppell Independent School District, or Plano Independent School District.

IT IS FURTHER ORDERED that this geographic restriction on the residence of the children shall be lifted if, at the time MANOGNA DEVABHAKTUNI wishes to remove the children from Frisco Independent School District, Coppell Independent School District, or Plano Independent School District for the purpose of changing the primary residence of the children,MOHAN KUMAR RAVI does not reside in Denton County and contiguous counties thereof

*Passport and International Travel*

IT IS ORDERED that MANOGNA DEVABHAKTUNI shall have the right to maintain possession of any passports of the children, T.R. and K.R., subject to the requirements for delivery of the passport and all other requirements set forth below.

MANOGNA DEVABHAKTUNI is ORDERED to deliver or cause to be delivered to the other parent the original, valid passport of T.R. and K.R. within ten days of their receipt of the other parent's notice of intent to have the children travel outside the United States during a period of possession of the other parent.

IT IS ORDERED that if a conservator intends to have the child or children

---



travel outside the United States during the conservator's period of possession of the children, the conservator shall provide written notice to the other conservator.  IT IS ORDERED that this written notice shall include all the following:

1.      any written consent form for travel outside the United States that is required by the country of destination, countries through which travel will occur, or the intended carriers;

2.      the date, time, and location of the child's departure from the United States;

3.      a reasonable description of means of transportation, including, if applicable, all names of carriers, flight numbers, and scheduled departure and arrival times;

4.      a reasonable description of each destination of the intended travel, including the name, address, and phone number of each interim destination and the final travel location;

5.      the dates the child is scheduled to arrive and depart at each such destination;

6.      the date, time, and location of the child's return to the United States;

7.      a complete statement of each portion of the intended travel during which the conservator providing the written notice will not accompany the child; and



8. the name, permanent and mailing addresses, and work and home telephone numbers of each person accompanying the child on the intended travel other than the conservator providing the written notice.

If the intended travel is a group trip, such as with a school or other organization, the conservator providing the written notice is ORDERED to provide with the written notice all information about the group trip and its sponsor instead of stating the name, permanent and mailing addresses, and work and home telephone numbers of each person accompanying the child.

IT IS FURTHER ORDERED that this written notice shall be furnished to the other conservator no less than twenty-one days before the intended day of departure of the child from the United States.

MOHAN KUMAR RAVI and MANOGNA DEVABHAKTUNI are each ORDERED to properly execute the written consent form to travel abroad and any other form required for the travel by the United States Department of State, passport authorities, foreign nations, travel organizers, school officials, or public carriers; when applicable, to have the forms duly notarized; and, within ten days of that conservator's receipt of each consent form, to deliver the form to the conservator providing the written notice.

IT IS ORDERED that any conservator who violates the terms and conditions of these provisions regarding the child's passport shall be liable for all costs



incurred due to that person's noncompliance with these provisions. These costs shall include, but not be limited to, the expense of nonrefundable or noncreditable tickets, the costs of nonrefundable deposits for travel or lodging, attorney's fees, and all other costs incurred seeking enforcement of any of these provisions.

*Possession and Access*

> *1.    Custom Possession Order*

IT IS ORDERED that each conservator shall comply with all terms and conditions of this Custom Possession Order. IT IS ORDERED that this Custom Possession Order is effective immediately and applies to all periods of possession occurring on and after the date the Court signs this Custom Possession Order. IT IS, THEREFORE, ORDERED:

(a)   Definitions

1.    In this Custom Possession Order, "school" means the primary or secondary school in which the child is enrolled or, if the child is not enrolled in a primary or secondary school, the public school district in which the child primarily resides.

2.    In this Custom Possession Order, "child" includes each child, whether one or more, who is a subject of this suit while that child is under the age of eighteen years and not otherwise emancipated.

(b)   Mutual Agreement or Specified Terms for Possession

---



IT IS ORDERED that the conservators shall have possession of the child at times mutually agreed to in advance by the parties, and, in the absence of mutual agreement, it is ORDERED that the conservators shall have possession of the child under the specified terms set out in this Custom Possession Order.

(c)     When Parents Reside 100 Miles or Less Apart

Except as otherwise expressly provided in this Custom Possession Order, when FATHER resides 100 miles or less from the primary residence of the child, FATHER shall have the right to possession of the child as follows:

1.     Weekends until the Youngest Child Begins Kindergarten—

On weekends that occur during the regular school term, beginning at the time the child's school is regularly dismissed on the first, third, and fifth Friday of each month and ending at 6:00 P.M. on the following Sunday.

On weekends that do not occur during the regular school term, beginning at 6:00 P.M. on the first, third, and fifth Friday of each month and ending at 6:00 P.M. on the following Sunday.

2.     Weekends   Beginning   When   the   Youngest   Child   Begins Kindergarten—

On weekends that occur during the regular school term, beginning at the time the child's school is regularly dismissed on the first, third, and fifth Friday of each month and ending at the time school resumes after the weekend.

---

**Agreed Final Decree of Divorce**    **Page 14 of 70**

On weekends that do not occur during the regular school term, beginning at 6:00 P.M. on the first, third, and fifth Friday of each month and ending at 6:00 P.M. on the following Sunday.

3.      Weekend Possession Extended by a Holiday—

Except as otherwise expressly provided in this Custom Possession Order, if a weekend period of possession by FATHER begins on a student holiday or a teacher in-service day that falls on a Friday during the regular school term, as determined by the school in which the child is enrolled, or a federal, state, or local holiday that falls on a Friday during the summer months when school is not in session, that weekend period of possession shall begin at 6:00 P.M. on the immediately preceding Thursday immediately preceding the student holiday or teacher in-service day and 6:00 P.M. on the Thursday immediately preceding the federal, state, or local holiday during the summer months.

Except as otherwise expressly provided in this Custom Possession Order, if a weekend period of possession by FATHER ends on or is immediately followed by a student holiday or a teacher in-service day that falls on a Monday during the regular school term, as determined by the school in which the child is enrolled, or a federal, state, or local holiday that falls on a Monday during the summer months when school is not in session, that weekend period of possession shall end at 6:00 P.M. on that Monday.



4. Thursdays—On Thursday of each week during the regular school term, beginning at the time school is regularly released and ending at the time school resumes the next Friday.

5. Spring Vacation in Even-Numbered Years—In even-numbered years, beginning at 6:00 P.M. on the day the child is dismissed from school for the school's spring vacation and ending at 6:00 P.M. on the day before school resumes after that vacation.

6. Extended Summer Possession by FATHER for 2016, 2017, & 2018—With Written Notice by April 1—If FATHER gives MOTHER written notice by April 1 of a year specifying an extended period or periods of summer possession for that year, FATHER shall have possession of the child for thirty days beginning no earlier than the day after the child's school is dismissed for the summer vacation, and ending no later than seven days before school resumes at the end of the summer vacation in that year, to be exercised in two 15-day periods with at least 15 days in between the possession period. These periods of possession shall begin and end at 6:00 P.M. on each applicable day.

Without Written Notice by April 1—If FATHER does not give MOTHER written notice by April 1 of a year specifying an extended period or periods of summer possession for that year, FATHER shall have possession of the child beginning at 6:00 P.M. on June 23 and ending at 6:00 P.M. on July 7; and beginning



at 6:00 P.M. on July 22 and ending at 6:00 P.M. on August 6 each summer.

7.      Extended Summer Possession by FATHER for 2019 and forward—

With Written Notice by April 1—If FATHER gives MOTHER written notice by April 1 of a year specifying an extended period or periods of summer possession for that year, FATHER shall have possession of the child for forty-five (45) days beginning no earlier than the day after the child's school is dismissed for the summer vacation and ending no later than seven days before school resumes at the end of the summer vacation in that year, to be exercised in one thirty (30) day period and one fifteen (15) day period. These periods of possession shall begin and end at 6:00 P.M. on each applicable day.

Without Written Notice by April 1—If FATHER does not give MOTHER written notice by April 1 of a year specifying an extended period or periods of summer possession for that year, FATHER shall have possession of the child beginning at 6:00 P.M. on June 5 and ending at 6:00 P.M. on July 6; and beginning at 6:00 P.M. on August 1 and ending at 6:00 P.M. on August 15 each summer.

Notwithstanding the Thursday periods of possession during the regular school term and the weekend periods of possession ORDERED for FATHER, it is expressly ORDERED that MOTHER shall have a superior right of possession of the child as follows:

1.      Spring Vacation in Odd-Numbered Years—In odd-numbered years,



beginning at 6:00 P.M. on the day the child is dismissed from school for the school's spring vacation and ending at 6:00 P.M. on the day before school resumes after that vacation.

2.    Summer Weekend Possession by MOTHER—If MOTHER gives FATHER written notice by April 15 of a year, MOTHER shall have possession of the child on any one weekend during the thirty day period of possession by FATHER, beginning at 6:00 P.M. on Friday and ending at 6:00 P.M. on the following Sunday, provided that MOTHER picks up the child from FATHER and returns the child to that same place and that the weekend so designated does not interfere with Father's Day possession.

3.    Extended Summer Possession by MOTHER—If MOTHER gives FATHER written notice by April 15 of a year MOTHER may designate one weekend beginning no earlier than the day after the child's school is dismissed for the summer vacation and ending no later than seven days before school resumes at the end of the summer vacation, during which an otherwise scheduled weekend period of possession by FATHER shall not take place in that year, provided that the weekend so designated does not interfere with FATHER's period or periods of extended summer possession or with Father's Day possession.

If MOTHER does not give FATHER written notice by April 15 of a year, MOTHER shall have weekend possession the third weekend of June, provided that



weekend does not interfere with Father's Day weekend. If the third weekend of June does interfere with Father's Day weekend, MOTHER shall have weekend possession the fourth weekend of June.

(d)     When Parents Reside More Than 100 Miles Apart

Except as otherwise expressly provided in this Custom Possession Order, when FATHER resides more than 100 miles from the residence of the child, FATHER shall have the right to possession of the child as follows:

1.     Weekends—Unless FATHER elects the alternative period of weekend possession described in the next paragraph, FATHER shall have the right to possession of the child on weekends that occur during the regular school term, beginning at THE TIME THE CHILD IS RELEASED FROM SCHOOL on the first, third, and fifth Friday of each month and ending  on the following Monday when the child shall return to school, and on weekends that do not occur during the regular school term, beginning at 6:00 P.M. on the first, third, and fifth Friday of each month and ending at 6:00 P.M. on the following Sunday.

Alternate Weekend Possession—In lieu of the weekend possession described in the foregoing paragraph, FATHER shall have the right to possession of the child not more than one weekend per month of FATHER's choice beginning at 6:00 P.M. on the day school recesses for the weekend and ending at 6:00 P.M. on the day before school resumes after the weekend. FATHER may elect an option for

this alternative period of weekend possession by giving written notice to MOTHER within ninety days after the parties begin to reside more than 100 miles apart. If FATHER makes this election, FATHER shall give MOTHER fourteen days' written or telephonic notice preceding a designated weekend. The weekends chosen shall not conflict with the provisions regarding Christmas, Thanksgiving, the child's birthday, and Mother's Day possession below.

    2.    Weekend Possession Extended by a Holiday—

Except as otherwise expressly provided in this Custom Possession Order, if a weekend period of possession by FATHER begins on a student holiday or a teacher in-service day that falls on a Friday during the regular school term, as determined by the school in which the child is enrolled, or a federal, state, or local holiday that falls on a Friday during the summer months when school is not in session, that weekend period of possession shall begin at 6:00 P.M. on the immediately preceding Thursday.

Except as otherwise expressly provided in this Custom Possession Order, if a weekend period of possession by FATHER ends on or is immediately followed by a student holiday or a teacher in-service day that falls on a Monday during the regular school term, as determined by the school in which the child is enrolled, or a federal, state, or local holiday that falls on a Monday during the summer months when school is not in session, that weekend period of possession shall end at 6:00

P.M. on that Monday.

3.      Spring Vacation in All Years—Every year, beginning at 6:00 P.M. on the day the child is dismissed from school for the school's spring vacation and ending at 6:00 P.M. on the day before school resumes after that vacation.

4.      Extended Summer Possession by FATHER—

With Written Notice by April 1—If FATHER gives MOTHER written notice by April 1 of a year specifying an extended period or periods of summer possession for that year, FATHER shall have possession of the child for forty-two days beginning no earlier than the day after the child's school is dismissed for the summer vacation and ending no later than seven days before school resumes at the end of the summer vacation in that year, to be exercised in no more than two separate periods of at least seven consecutive days each, as specified in the written notice. These periods of possession shall begin and end at 6:00 P.M. on each applicable day.

Without Written Notice by April 1—If FATHER does not give MOTHER written notice by April 1 of a year specifying an extended period or periods of summer possession for that year, FATHER shall have possession of the child for forty-two consecutive days beginning at 6:00 P.M. on June 15 and ending at 6:00 P.M. on July 27 of that year.

Notwithstanding the weekend periods of possession ORDERED for

FATHER, it is expressly ORDERED that MOTHER shall have a superior right of possession of the child as follows:

1.      Summer Weekend Possession by MOTHER—If MOTHER gives FATHER written notice by April 15 of a year, MOTHER shall have possession of the child on any one weekend beginning at 6:00 P.M. on Friday and ending at 6:00 P.M. on the following Sunday during any one period of possession by FATHER during FATHER's extended summer possession in that year, provided that if a period of possession by FATHER in that year exceeds thirty days, MOTHER may have possession of the child under the terms of this provision on any two nonconsecutive weekends during that period and provided that MOTHER picks up the child from FATHER and returns the child to that same place and that no weekend so designated interferes with Father's Day possession.

2.      Extended Summer Possession by MOTHER—If MOTHER gives FATHER written notice by April 15 of a year, MOTHER may designate twenty-one days beginning no earlier than the day after the child's school is dismissed for the summer vacation and ending no later than seven days before school resumes at the end of the summer vacation in that year, to be exercised in no more than two separate periods of at least seven consecutive days each, during which FATHER shall not have possession of the child, provided that the period or periods so designated do not interfere with FATHER's period or periods of extended summer

possession or with Father's Day possession. These periods of possession shall begin and end at 6:00 P.M. on each applicable day.

(e)     Holidays Unaffected by Distance

Notwithstanding the weekend and Thursday periods of possession of FATHER, MOTHER and FATHER shall have the right to possession of the child as follows:

1.     Christmas Holidays in Even-Numbered Years—In even-numbered years, FATHER shall have the right to possession of the child beginning at 6:00 P.M. on the day the child is dismissed from school for the Christmas school vacation and ending at noon on December 28, and MOTHER shall have the right to possession of the child beginning at noon on December 28 and ending at 6:00 P.M. on the day before school resumes after that Christmas school vacation.

2.     Christmas Holidays in Odd-Numbered Years—In odd-numbered years, MOTHER shall have the right to possession of the child beginning at 6:00 P.M. on the day the child is dismissed from school for the Christmas school vacation and ending at noon on December 28, and FATHER shall have the right to possession of the child beginning at noon on December 28 and ending at 6:00 P.M. on the day before school resumes after that Christmas school vacation.

3.     Thanksgiving in Odd-Numbered Years—In odd-numbered years, FATHER shall have the right to possession of the child beginning at 6:00 P.M. on

the day the child is dismissed from school for the Thanksgiving holiday and ending at 6:00 P.M. on the Sunday following Thanksgiving.

4.　　Thanksgiving in Even-Numbered Years—In even-numbered years, MOTHER shall have the right to possession of the child beginning at 6:00 P.M. on the day the child is dismissed from school for the Thanksgiving holiday and ending at 6:00 P.M. on the Sunday following Thanksgiving.

5.　　Child's Birthday—If a conservator is not otherwise entitled under this Custom Possession Order to present possession of the child on the child's birthday, that conservator shall have possession of the child and the child's minor siblings beginning at 6:00 P.M. and ending at 8:00 P.M. on that day, provided that that conservator picks up the children from the other conservator's residence and returns the children to that same place.

6.　　Father's Day—Father shall have the right to possession of the child each year, beginning at 6:00 P.M. on the Friday preceding Father's Day and ending at 6:00 P.M. on Father's Day, provided that if Father is not otherwise entitled under this Custom Possession Order to present possession of the child, he shall pick up the child from the other conservator's residence and return the child to that same place.

(f)　　Undesignated Periods of Possession

MOTHER shall have the right of possession of the child at all other times

---

not specifically designated in this Custom Possession Order for FATHER.

(g)     General Terms and Conditions

Except as otherwise expressly provided in this Custom Possession Order, the terms and conditions of possession of the child that apply regardless of the distance between the residence of a parent and the child are as follows:

1.     Surrender of Child by MOTHER—MOTHER is ORDERED to surrender the child to FATHER at the beginning of each period of FATHER's possession at the residence of MOTHER.

If a period of possession by FATHER begins at the time the child's school is regularly dismissed, MOTHER is ORDERED to surrender the child to FATHER at the beginning of each such period of possession at the school in which the child is enrolled. If the child is not in school, FATHER shall pick up the child at the residence of MOTHER at 6:00 P.M., and MOTHER is ORDERED to surrender the child to FATHER at the residence of MOTHER at 6:00 P.M. under these circumstances.

2.     Surrender of Child by FATHER—FATHER is ORDERED to surrender the child to MOTHER at the residence of FATHER at the end of each period of possession.

If a period of possession by FATHER ends at the time the child's school resumes, FATHER is ORDERED to surrender the child to MOTHER at the end of

each such period of possession at the school in which the child is enrolled or, if the child is not in school, at the residence of FATHER at 6:00 P.M.

3.      Pickup of Child by FATHER—FATHER is ORDERED to pickup the child at the residence of MOTHER at the beginning of each period of FATHER's possession.

4.      Pickup of Child by MOTHER—MOTHER is ORDERED to pickup the child from FATHER, if MOTHER is entitled to possession of the child, at the end of each of FATHER's exclusive periods of possession, at the residence of FATHER.

5.      Personal Effects—Each conservator is ORDERED to return with the child the personal effects that the child brought at the beginning of the period of possession.

6.      Designation of Competent Adult—Each conservator may designate any competent adult to pick up and return the child, as applicable. IT IS ORDERED that a conservator or a designated competent adult be present when the child is picked up or returned.

7.      Inability to Exercise Possession—Each conservator is ORDERED to give notice to the person in possession of the child on each occasion that the conservator will be unable to exercise that conservator's right of possession for any specified period.

8.    Written Notice—Written notice, including notice provided by electronic mail or facsimile, shall be deemed to have been timely made if received or, if applicable, postmarked before or at the time that notice is due. Each conservator is ORDERED to notify the other conservator of any change in the conservator's electronic mail address or facsimile number within twenty-four hours after the change.

9.    Notice to School and MOTHER—If FATHER's time of possession of the child ends at the time school resumes and for any reason the child is not or will not be returned to school, FATHER shall immediately notify the school and MOTHER that the child will not be or has not been returned to school.

10.    Right of First Refusal—If either parent needs to leave the child in someone else's possession for a period of time in excess of six (6) hours during that parent's possession period, the parent in possession of the child shall first off the other parent the opportunity to care for the child during such period of time.

This concludes the Custom Possession Order.

*Other Child Related Provisions*

The periods of possession ordered above apply to each child the subject of this suit while that child is under the age of eighteen years and not otherwise emancipated.

Except as expressly provided herein, IT IS ORDERED that neither

conservator shall take possession of the children during the other conservator's period of possession unless there is a prior written agreement signed by both conservators or in case of an emergency.

Daycare

IT IS ORDERED that MOTHER shall pay all costs and tuition associated with the children's daycare.

Our Family Wizard

It is ORDERED that all parties visit www.OurFamilyWizard.com and sign-up for a "Parent" account to utilize the tools listed in the "Features" tab. Each party shall sign-up through the website within three (3) days from the date this order is signed, shall pay their own costs for a minimum one-year subscription, and shall renew the subscription annually until further order of the court.

It is ORDERED that all parties shall communicate through the website thereafter regarding all conservatorship and custody matters, information sharing matters, possession schedule modifications, and reimbursable expenses. The parties shall not email or text message each other directly regarding the child(ren), but shall instead post all communication exclusively through the website, except in the event of an emergency that must be acted upon in less than 24 hours. In such an emergency, the subject and general content of any telephonic communication shall be memorialized by a posting to the website.

It is ORDERED that all parties shall communicate all significant information pertaining to the child(ren)'s educational, medical, dental, psychological, and social status, including but not limited to school sponsored events, extracurricular activities, and medical or dental appointments, to the other party within 24 hours of scheduling such an appointment or upon receipt of such information.

It is ORDERED that all parties shall respond to the communication or request of the other party within 48 hours if a response is required. If a party fails to respond within 48 hours without requesting an extension of time to obtain further information with which to reply, including but not limited to seeking legal counsel or independent medical advice, then such failure to respond shall be deemed a consent or a waiver, as the case may be, of the action, activity, period, or decision requested or offered.

It is ORDERED that any requirement herein that agreements with or notices to the other party be in writing shall be communicated exclusively through the website.

It is ORDERED that all parties shall utilize the website's "Expense Log" feature, OFWpay, whenever applicable to ensure a future record of all potentially reimbursable expenses and to mitigate the likelihood of future litigation over such matters.

It is ORDERED that all parties shall preserve the original of any scanned document that is posted through the website. If a party does not have the capability of scanning a required document and attaching the electronic version for posting to the website, they shall post a description of the document on the website and mail a copy of the document to the other party within 48 hours.

IT IS ORDERED that all parties shall complete, sign, and submit a "Professional Permission Form" to allow access to the accounts by the parenting facilitator, parenting coordinator, social study evaluator, amicus attorney, attorney ad litem, guardian ad litem, or other court appointed professionals, if any.

Domestic Travel

IT IS ORDERED that, until a child reaches the age of five years, the following arrangements for the travel of the child shall control:

Adult to Accompany Child—IT IS ORDERED that FATHER shall travel with the child between the residence of MOTHER and that of FATHER at the beginning of each period of possession. IT IS FURTHER ORDERED that MOTHER shall travel with the child between the residence of FATHER and that of MOTHER at the end of each period of possession. In place of this requirement, each conservator is authorized to designate a responsible adult known to the child to travel with the child between the residences of the parties. IT IS FURTHER ORDERED that the child shall not travel alone between the residence of FATHER

and that of MOTHER until the child reaches the age of five years.

Expenses Shared by FATHER and MOTHER—IT IS ORDERED that FATHER shall pay all travel expenses, charges, escort fees, and air fares incurred for the child for transportation from the residence of MOTHER to that of FATHER. IT IS FURTHER ORDERED that MOTHER shall pay all travel expenses, charges, escort fees, and air fares incurred for the child for transportation from the residence of FATHER to that of MOTHER.

IT IS ORDERED that the following provisions shall govern the arrangements for the travel of the child to and from FATHER after the child reaches the age of five years.

Notice of Place and Time of Possession—IT IS ORDERED that, if a parent desires to take possession of the child at an airport near that parent's residence, that parent shall state these facts in a notice letter to the other parent:

   a.   the airport where Sole Managing Conservator is to surrender the child;

   b.   the date and time of the flight on which the child is scheduled to leave; and

   c.   the airline and flight number of the airplane on which the child is scheduled to leave.

IT IS FURTHER ORDERED that, if MOTHER desires to take possession of the child at an airport near MOTHER's residence, MOTHER shall state these facts in a notice letter to FATHER:

a.    the airport where FATHER is to surrender the child;

b.    the date and time of the flight on which the child is scheduled to
leave; and

c.    the airline and flight number of the airplane on which the child is
scheduled to leave.

Flight Arrangements—IT IS ORDERED that each conservator shall make airline reservations for the child only on major commercial passenger airlines on flights having no change of airplanes between the airport of departure and the airport of final arrival (a "nonequipment change flight"). IT IS FURTHER ORDERED that each conservator shall make airline reservations for the child on flights that depart from a commercial airport near the residence of the other conservator that offers regularly scheduled passenger flights to various cities throughout the United States on major commercial passenger airlines.

Delivery and Pickup by MOTHER—IT IS ORDERED that MOTHER shall deliver the child to the airport from which the child is scheduled to leave at the beginning of each period of possession at least 2 hours before the scheduled departure time. IT IS FURTHER ORDERED that MOTHER shall surrender the child to a flight attendant who is employed by the airline and who will be flying on the same flight on which the child is scheduled.

IT IS FURTHER ORDERED that MOTHER shall take possession of the child at the end of FATHER's period of possession at the airport where the child is

scheduled to return and at the specific airport gate where the passengers from the child's scheduled flight disembark.

Pickup and Return by FATHER—IT IS ORDERED that FATHER shall take possession of the child at the beginning of each period of possession at the airport where the child is scheduled to arrive and at the specific airport gate where the passengers from the child's scheduled flight disembark.

IT IS FURTHER ORDERED that FATHER, at the end of each period of possession, shall deliver the child to the airport where the child is scheduled to depart at least 2 hours before the scheduled departure time and surrender the child to a flight attendant who is employed by the airline and who will be flying on the same flight on which the child is scheduled to return.

Missed Flight—IT IS ORDERED that any conservator who has possession of the child at the time shall notify the other conservator immediately if the child is not placed on a scheduled flight at the beginning or end of a period of possession. IT IS FURTHER ORDERED that, if the child should miss a scheduled flight, the conservator having possession of the child when the flight is missed shall schedule another nonequipment change flight for the child as soon as is possible after the originally scheduled flight and shall pay any additional expense associated with the changed flight and give the other conservator notice of the date and time of that flight.

Expenses Shared by FATHER and MOTHER—IT IS ORDERED that FATHER shall purchase in advance the airline tickets (including escort fees) to be used by the child for the child's flight from the airport near the residence of MOTHER to the airport near the residence of FATHER. IT IS FURTHER ORDERED that FATHER shall make the necessary arrangements with the airlines and with MOTHER in order that the airline tickets are available to the child before a scheduled flight. IT IS FURTHER ORDERED that MOTHER shall purchase in advance the airline tickets (including escort fees) to be used by the child for the child's flight from the airport near the residence of FATHER to the airport near the residence of MOTHER. IT IS FURTHER ORDERED that MOTHER shall make the necessary arrangements with the airlines and with FATHER in order that the airline tickets are available to the child before a scheduled flight.

Miscellaneous Expenses—IT IS ORDERED that the expenses of a conservator incurred in traveling to and from an airport, as well as related parking and baggage-handling expenses, are the sole responsibility of the conservator delivering or receiving the child at the airport.

*Child Support*

IT IS ORDERED that MOHAN KUMAR RAVI is obligated to pay and shall pay to MANOGNA DEVABHAKTUNI child support of one thousand three hundred seventy dollars and no cents ($1370.00) per month, with the first payment

being due and payable on January 1, 2016 and a like payment being due and payable on the 1st day of each month thereafter until the first month following the date of the earliest occurrence of one of the events specified below:

1.    any child reaches the age of eighteen years or graduates from high school, whichever occurs later, subject to the provisions for support beyond the age of eighteen years set out below;

2.    any child marries;

3.    any child dies;

4.    any child enlists in the armed forces of the United States and begins active service as defined by section 101 of title 10 of the United States Code; or

5.    any child's disabilities are otherwise removed for general purposes; or

Thereafter, MOHAN KUMAR RAVI is ORDERED to pay MANOGNA DEVABHAKTUNI child support of one thousand ninety-six dollars and no cents ($1096.00) each month beginning the same day of the first month following the last month in which child support was payable according to the preceding paragraph, payable on or before that date and on or before the same day of each month thereafter until the next occurrence of one of the events specified above for another child.

If a child is eighteen years of age and has not graduated from high school, IT IS ORDERED that MOHAN KUMAR RAVI's obligation to pay child support to

MANOGNA DEVABHAKTUNI shall not terminate but shall continue for as long as the child is enrolled-

1.    under chapter 25 of the Texas Education Code in an accredited secondary school in a program leading toward a high school diploma or under section 130.008 of the Education Code in courses for joint high school and junior college credit and is complying with the minimum attendance requirements of subchapter C of chapter 25 of the Education Code or

2.    on a full-time basis in a private secondary school in a program leading toward a high school diploma and is complying with the minimum attendance requirements imposed by that school.

Payment

IT IS ORDERED that all payments shall be made directly to MAGNONA DEVABHAKTUNI by check, cash, or money order. On this date the Court signed an Income Withholding for Support. If MOHAN KUMAR RAVI is 31 days past due to his child support payment, MANOGNA DEVABHAKTUNI may file the Income Withholding for Support with the Denton County District Clerk's office.

If the Income Withholding for Support is filed, IT IS ORDERED that any employer of MOHAN KUMAR RAVI shall be ordered to withhold from earnings for child support from the disposable earnings of MOHAN KUMAR RAVI for the support of T.R. and K.R.

IT IS FURTHER ORDERED that all amounts withheld from the disposable earnings of MOHAN KUMAR RAVI by the employer and paid in accordance with the order to that employer shall constitute a credit against the child support obligation. Payment of the full amount of child support ordered paid by this decree through the means of withholding from earnings shall discharge the child support obligation. If the amount withheld from earnings and credited against the child support obligation is less than 100 percent of the amount ordered to be paid by this decree, the balance due remains an obligation of MOHAN KUMAR RAVI and it is hereby ORDERED that MOHAN KUMAR RAVI pay the balance due directly to the state disbursement unit specified below.

<u>Change of Employment</u>

IT IS FURTHER ORDERED that MOHAN KUMAR RAVI shall notify this Court and MANOGNA DEVABHAKTUNI by U.S. certified mail, return receipt requested, of any change of address and of any termination of employment. This notice shall be given no later than seven days after the change of address or the termination of employment. This notice or a subsequent notice shall also provide the current address of MOHAN KUMAR RAVI and the name and address of his current employer, whenever that information becomes available.

<u>Clerk's Duties</u>

IT IS ORDERED that, on the request of a prosecuting attorney, the title IV-

D agency, the friend of the Court, a domestic relations office, MANOGNA DEVABHAKTUNI, MOHAN KUMAR RAVI, or an attorney representing MANOGNA DEVABHAKTUNI or MOHAN KUMAR RAVI, the clerk of this Court shall cause a certified copy of the Income Withholding for Support to be delivered to any employer.

*Other Child Support Provisions*

<u>Extra-Curricular Activities</u>

IT IS ORDERED that MANOGNA DEVABHAKTUNI and MOHAN KUMAR RAVI shall each be responsible for fifty percent (50%) of all costs associated with one agreed upon extracurricular activity per child per fall semester, spring semester and summer.

*Health Care*

1.   IT IS ORDERED that MOHAN KUMAR RAVI and MANOGNA DEVABHAKTUNI shall each provide medical support for the child as set out in this order as additional child support for as long as the Court may order MOHAN KUMAR RAVI and MANOGNA DEVABHAKTUNI to provide support for the child under sections 154.001 and 154.002 of the Texas Family Code. Beginning on the day MOHAN KUMAR RAVI and MANOGNA DEVABHAKTUNI's actual or potential obligation to support the child under sections 154.001 and 154.002 of the Family Code terminates, IT IS ORDERED that MOHAN KUMAR

RAVI and MANOGNA DEVABHAKTUNI are discharged from the obligations set forth in this medical support order, except for any failure by a parent to fully comply with those obligations before that date.

    2.    Definitions -

"Health Insurance" means insurance coverage that provides basic vision, dental and health-care services, including usual physician services, office visits, hospitalization, and laboratory, X-ray, and emergency services, coverage that may be provided through a health maintenance organization or other private or public organization, other than medical assistance under chapter 32 of the Texas Human Resources Code.

"Reasonable cost" means the cost of health insurance coverage for a child that does not exceed 9 percent of MOHAN KUMAR RAVI's annual resources, as described by section 154.062(b) of the Texas Family Code.

"Reasonable and necessary health-care expenses not paid by insurance and incurred by or on behalf of a child" include, without limitation, any copayments for office visits or prescription drugs, the yearly deductible, if any, and medical, surgical, prescription drug, mental health-care services, dental, eye care, ophthalmological, and orthodontic charges.  These reasonable and necessary health-care expenses do not include expenses for travel to and from the health-care provider or for nonprescription medication.

"Furnish" means -

    a.    to hand deliver the document by a person eighteen years of age or older either to the recipient or to a person who is eighteen years of age or older and permanently resides with the recipient;

    b.    to deliver the document to the recipient by certified mail, return receipt requested, to the recipient's last known mailing or residence address;

    c.    to deliver the document to the recipient at the recipient's last known mailing or residence address using any person or entity whose principal business is that of a courier or deliverer of papers or documents either within or outside the United States; or

    d.    to deliver the document to the recipient at the recipient's electronic mail address and in the event of any change in either party's electronic mail address, that party is ORDERED to notify the other party of such change in writing within twenty-four hours after the change.

3.    Findings on Health Insurance Availability- Having considered the cost, accessibility, and quality of health insurance coverage available to the parties, the Court finds:

---

**Agreed Final Decree of Divorce**                    **Page 40 of 70**

Health insurance is available or is in effect for the child through MOHAN KUMAR RAVI's employment or membership in a union, trade association, or other organization at a reasonable cost.

IT IS FURTHER FOUND that the following orders regarding health-care coverage are in the best interest of the child.

4.     Provision of Health-Care Coverage -

As additional child support, MOHAN KUMAR RAVI is ORDERED to maintain health insurance for the children who are the subject of this suit that covers basic vision, dental and health-care services, including usual physician services, office visits, hospitalization, laboratory, X-ray, and emergency services.

MOHAN KUMAR RAVI is ORDERED to maintain such health insurance in full force and effect on any child who is the subject of this suit as long as child support is payable for that child. MOHAN KUMAR RAVI is ORDERED to convert any group insurance to individual coverage or obtain other health insurance for the child within fifteen days of termination of his employment or other disqualification from the group insurance. MOHAN KUMAR RAVI is ORDERED to exercise any conversion options or acquisition of new health insurance in such a manner that the resulting insurance equals or exceeds that in effect immediately before the change.

MOHAN KUMAR RAVI is ORDERED to furnish MANOGNA



DEVABHAKTUNI a true and correct copy of the health insurance policy or certification and a schedule of benefits within 10 days of the signing of this order. MOHAN KUMAR RAVI is ORDERED to furnish MANOGNA DEVABHAKTUNI the insurance cards and any other forms necessary for use of the insurance within 10 days of the signing of this order. MOHAN KUMAR RAVI is ORDERED to provide, within three days of receipt by him, to MANOGNA DEVABHAKTUNI any insurance checks, other payments, or explanations of benefits relating to any medical expenses for the child that MANOGNA DEVABHAKTUNI paid or incurred.

Pursuant to section 1504.051 of the Texas Insurance Code, IT IS ORDERED that if MOHAN KUMAR RAVI is eligible for dependent health coverage but fails to apply to obtain coverage for the child, the insurer shall enroll the child on application of MANOGNA DEVABHAKTUNI or others as authorized by law.

Pursuant to section 154.183(c) of the Texas Family Code, the reasonable and necessary health-care expenses of the child that are not reimbursed by health insurance are allocated as follows: MANOGNA DEVABHAKTUNI is ORDERED to pay 50 percent and MOHAN KUMAR RAVI is ORDERED to pay 50 percent of the unreimbursed health-care expenses if, at the time the expenses are incurred, MOHAN KUMAR RAVI is providing health insurance as ordered.

The party who incurs a health-care expense on behalf of the child is

ORDERED to furnish to the other party all forms, receipts, bills, statements, and explanations of benefits reflecting the uninsured portion of the health-care expenses within thirty days after he or she receives them. The nonincurring party is ORDERED to pay his or her percentage of the uninsured portion of the health-care expenses either by paying the health-care provider directly or by reimbursing the incurring party for any advance payment exceeding the incurring party's percentage of the uninsured portion of the health-care expenses within thirty days after the nonincurring party receives the forms, receipts, bills, statements, and explanations of benefits.

These provisions apply to all unreimbursed health-care expenses of the child who is the subject of this suit that are incurred while child support is payable for the child.

5.    Secondary Coverage - IT IS ORDERED that if a party provides secondary health insurance coverage for the child, both parties shall cooperate fully with regard to the handling and filing of claims with the insurance carrier providing the coverage in order to maximize the benefits available to the child and to ensure that the party who pays for health-care expenses for the child is reimbursed for the payment from both carriers to the fullest extent possible.

6.    Compliance with Insurance Company Requirements - Each party is ORDERED to conform to all requirements imposed by the terms and conditions of



the policy of health insurance covering the child in order to assure the maximum reimbursement or direct payment by the insurance company of the incurred health-care expense, including but not limited to requirements for advance notice to any carrier, second opinions, and the like. Each party is ORDERED to use "preferred providers," or services within the health maintenance organization, if applicable. Disallowance of the bill by a health insurer shall not excuse the obligation of either party to make payment. Excepting emergency health-care expenses incurred on behalf of the child, if a party incurs health-care expenses for the child using "out-of-network" health-care providers or services, or fails to follow the health insurance company procedures or requirements, that party shall pay all such health-care expenses incurred absent (1) written agreement of the parties allocating such health-care expenses or (2) further order of the Court.

7.     Claims - Except as provided in this paragraph, the party who is not carrying the health insurance policy covering the child is ORDERED to furnish to the party carrying the policy, within fifteen days of receiving them, any and all forms, receipts, bills, and statements reflecting the health-care expenses the party not carrying the policy incurs on behalf of the child. In accordance with section 1204.251 and 1504.055(a) of the Texas Insurance Code, IT IS ORDERED that the party who is not carrying the health insurance policy covering the child, at that party's option, may file any claims for health-care expenses directly with the

insurance carrier with and from whom coverage is provided for the benefit of the child and receive payments directly from the insurance company. Further, for the sole purpose of section 1204.251 of the Texas Insurance Code, MANOGNA DEVABHAKTUNI is designated the managing conservator or possessory conservator of the child.

The party who is carrying the health insurance policy covering the child is ORDERED to submit all forms required by the insurance company for payment or reimbursement of health-care expenses incurred by either party on behalf of the child to the insurance carrier within fifteen days of that party's receiving any form, receipt, bill, or statement reflecting the expenses.

8.    Constructive Trust for Payments Received - IT IS ORDERED that any insurance payments received by a party from the health insurance carrier as reimbursement for health-care expenses incurred by or on behalf of the child shall belong to the party who paid those expenses. IT IS FURTHER ORDERED that the party receiving the insurance payments is designated a constructive trustee to receive any insurance checks or payments for health-care expenses paid by the other party, and the party carrying the policy shall endorse and forward the checks or payments, along with any explanation of benefits received, to the other party within three days of receiving them.

9.    WARNING - A PARENT ORDERED TO PROVIDE HEALTH

INSURANCE OR TO PAY THE OTHER PARENT ADDITIONAL CHILD SUPPORT FOR THE COST OF HEALTH INSURANCE WHO FAILS TO DO SO IS LIABLE FOR NECESSARY MEDICAL EXPENSES OF THE CHILD, WITHOUT REGARD TO WHETHER THE EXPENSES WOULD HAVE BEEN PAID IF HEALTH INSURANCE HAD BEEN PROVIDED, AND FOR THE COST OF HEALTH INSURANCE PREMIUMS OR CONTRIBUTIONS, IF ANY, PAID ON BEHALF OF THE CHILD.

10.    Notice to Employer - On this date a Medical Support Notice was authorized to be issued by the Court.  For the purpose of section 1169 of title 29 of the United States Code, the party not carrying the health insurance policy is designated the custodial parent and alternate recipient's representative.

*Miscellaneous Child Support Provisions*

Support as Obligation of Estate

IT IS ORDERED that the provisions for child support in this decree shall be an obligation of the estate of MOHAN KUMAR RAVI and shall not terminate on the death of MOHAN KUMAR RAVI. Payments received for the benefit of the child, including payments from the Social Security Administration, Department of Veterans Affairs or other governmental agency or life insurance proceeds, annuity payments, trust distributions, or retirement survivor benefits, shall be a credit against this obligation.  Any remaining balance of the child support is an obligation

of MOHAN KUMAR RAVI's estate.

<u>Termination of Orders on Remarriage of Parties but Not on Death of Obligee</u>

The provisions of this decree relating to current child support terminate on the remarriage of MOHAN KUMAR RAVI to MANOGNA DEVABHAKTUNI unless a nonparent or agency has been appointed conservator of the child under chapter 153 of the Texas Family Code. An obligation to pay child support under this decree does not terminate on the death of MANOGNA DEVABHAKTUNI but continues as an obligation to T.R. and K.R.

*Medical Notification*

Each party is ORDERED to inform the other party within 2 hours of any medical condition of the child requiring surgical intervention, hospitalization, or both.

Within 7 days after the Court signs this decree, each party is ORDERED to execute -

1.    all necessary releases pursuant to the Health Insurance Portability and Accountability Act (HIPAA) and 45 C.F.R. section 164.508 to permit the other conservator to obtain health-care information regarding the child; and

2.    for all health-care providers of the child, an authorization for disclosure of protected health information to the other conservator pursuant to the

HIPAA and 45 C.F.R. section 164.508.

Each party is further ORDERED to designate the other conservator as a person to whom protected health information regarding the child may be disclosed whenever the party executes an authorization for disclosure of protected health information pursuant to the HIPAA and 45 C.F.R. section 164.508.

*Information Regarding Parties*

The information required for each party by section 105.006(a) of the Texas Family Code is as follows:

Name:     MOHAN KUMAR RAVI

Social Security number:  xxx-xx-7144

Driver's license number:  xxxx5614   Issuing state: Texas

Current residence address: 12409 Pleasant Hill Lane, Frisco, Texas 75033

Mailing address:    same as above

Home telephone number: (469) 789-4824

Name of employer:  Verizon

Address of employment:  700 Hidden Ridge Drive, Irving, Texas 75038

Work telephone number:

Name:     MANOGNA DEVABHAKTUNI

Social Security number:  xxx-xx-0622

Driver's license number:  20770231  Issuing state:  Texas

Current residence address:  2355 Lebanon Rd., Apt. 2107, Frisco, TX 75034

Mailing address:  2355 Lebanon Rd., Apt. 2107, Frisco, TX 75034

Home telephone number:  469-441-9969

Name of employer: Concentra

Address of employment:  5080 Spectrum Dr., Addison, TX 75001

Work telephone number:  972-725-6630

*Required Notices*

EACH PERSON WHO IS A PARTY TO THIS ORDER IS ORDERED TO NOTIFY EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY OF ANY CHANGE IN THE PARTY'S CURRENT RESIDENCE ADDRESS, MAILING ADDRESS, HOME TELEPHONE NUMBER, NAME OF EMPLOYER, ADDRESS OF EMPLOYMENT, DRIVER'S LICENSE NUMBER, AND WORK TELEPHONE NUMBER.  THE PARTY IS ORDERED TO GIVE NOTICE OF AN INTENDED CHANGE IN ANY OF THE REQUIRED INFORMATION TO EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY ON OR BEFORE THE 6OTH DAY BEFORE THE INTENDED CHANGE.  IF THE PARTY DOES NOT KNOW OR COULD NOT HAVE KNOWN OF THE CHANGE IN SUFFICIENT TIME TO PROVIDE 60-DAY NOTICE, THE PARTY IS ORDERED TO GIVE NOTICE OF THE CHANGE ON OR BEFORE THE FIFTH DAY AFTER THE DATE THAT THE

PARTY KNOWS OF THE CHANGE.

THE DUTY TO FURNISH THIS INFORMATION TO EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY CONTINUES AS LONG AS ANY PERSON, BY VIRTUE OF THIS ORDER, IS UNDER AN OBLIGATION TO PAY CHILD SUPPORT OR ENTITLED TO POSSESSION OF OR ACCESS TO A CHILD.

FAILURE BY A PARTY TO OBEY THE ORDER OF THIS COURT TO PROVIDE EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY WITH THE CHANGE IN THE REQUIRED INFORMATION MAY RESULT IN FURTHER LITIGATION TO ENFORCE THE ORDER, INCLUDING CONTEMPT OF COURT. A FINDING OF CONTEMPT MAY BE PUNISHED BY CONFINEMENT IN JAIL FOR UP TO SIX MONTHS, A FINE OF UP TO $500 FOR EACH VIOLATION, AND A MONEY JUDGMENT FOR PAYMENT OF ATTORNEY'S FEES AND COURT COSTS.

Notice shall be given to the other party by delivering a copy of the notice to the party by registered or certified mail, return receipt requested. Notice shall be given to the Court by delivering a copy of the notice either in person to the clerk of this Court or by registered or certified mail addressed to the clerk at 1450 E. McKinney Street, Suite 1200, Denton, Texas 76209. Notice shall be given to the state case registry by mailing a copy of the notice to State Case Registry, Contract

Services Section, MC046S, P.O. Box 12017, Austin, Texas 78711-2017.

NOTICE TO ANY PEACE OFFICER OF THE STATE OF TEXAS:  YOU MAY USE REASONABLE EFFORTS TO ENFORCE THE TERMS OF CHILD CUSTODY SPECIFIED IN THIS ORDER.  A PEACE OFFICER WHO RELIES ON THE TERMS OF A COURT ORDER AND THE OFFICER'S AGENCY ARE ENTITLED TO THE APPLICABLE IMMUNITY AGAINST ANY CLAIM, CIVIL OR OTHERWISE, REGARDING THE OFFICER'S GOOD FAITH ACTS PERFORMED IN THE SCOPE OF THE OFFICER'S DUTIES IN ENFORCING THE TERMS OF THE ORDER THAT RELATE TO CHILD CUSTODY.  ANY PERSON WHO KNOWINGLY PRESENTS FOR ENFORCEMENT AN ORDER THAT IS INVALID OR NO LONGER IN EFFECT COMMITS AN OFFENSE THAT MAY BE PUNISHABLE BY CONFINEMENT IN JAIL FOR AS LONG AS TWO YEARS AND A FINE OF AS MUCH AS $10,000.

*Warnings to Parties*

WARNINGS TO PARTIES: FAILURE TO OBEY A COURT ORDER FOR CHILD SUPPORT OR FOR POSSESSION OF OR ACCESS TO A CHILD MAY RESULT IN FURTHER LITIGATION TO ENFORCE THE ORDER, INCLUDING CONTEMPT OF COURT.  A FINDING OF CONTEMPT MAY BE PUNISHED BY CONFINEMENT IN JAIL FOR UP TO SIX MONTHS, A FINE OF UP TO $500 FOR EACH VIOLATION, AND A MONEY JUDGMENT

FOR PAYMENT OF ATTORNEY'S FEES AND COURT COSTS.

FAILURE OF A PARTY TO MAKE A CHILD SUPPORT PAYMENT TO THE PLACE AND IN THE MANNER REQUIRED BY A COURT ORDER MAY RESULT IN THAT PARTY NOT RECEIVING CREDIT FOR MAKING THE PAYMENT.

FAILURE OF A PARTY TO PAY CHILD SUPPORT DOES NOT JUSTIFY DENYING THAT PARTY COURT-ORDERED POSSESSION OF OR ACCESS TO A CHILD. REFUSAL BY A PARTY TO ALLOW POSSESSION OF OR ACCESS TO A CHILD DOES NOT JUSTIFY FAILURE TO PAY COURT-ORDERED CHILD SUPPORT TO THAT PARTY.

*Division of Marital Estate*

The Court finds that the following is a just and right division of the parties' marital estate having due regard for the rights of each party and the children of the marriage.

<u>Property to Husband</u>

IT IS ORDERED AND DECREED that the husband, MOHAN KUMAR RAVI, is awarded the following as his sole and separate property, and the wife is divested of all right, title, interest, and claim in and to that property:

H-1. The following real property, including but not limited to any escrow funds, prepaid insurance, utility deposits, keys, house plans, home security access

and code, garage door opener, warranties and service contracts, and title and closing documents.

1. 12409 Pleasant Hill Lane, Frisco, Texas 75033, with the legal description of Knolls of Frisco, Phase 1, Blk H, Lot 32.

2. Wife shall return to Husband any and all garage door openers, keys, and home access to the above listed house by December 15, 2015

H-2. All household furniture, furnishings, fixtures, goods, art objects, collectibles, appliances, and equipment in the possession of the husband or subject to his sole control.

H-3. All clothing, jewelry, and other personal effects in the possession of the husband or subject to his sole control.

H-4. All sums of cash in the possession of the husband or subject to his sole control, including funds on deposit, together with accrued but unpaid interest, in banks, savings institutions, or other financial institutions, which accounts stand in the husband's sole name or from which the husband has the sole right to withdraw funds or which are subject to the husband's sole control, including but not limited to:

1. Wells Fargo checking account ending in 4622;

2. Wells Fargo Way2Save savings account ending in 2815; and

3. Capital One Money Market ending in 0371;

H-5.   The sum, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, and any other rights related to any profit-sharing plan, retirement plan, Keogh plan, pension plan, employee stock option plan, 401(k) plan, employee savings plan, accrued unpaid bonuses, disability plan, or other benefits existing by reason of the husband's past, present, or future employment in the following accounts:

1. One hundred percent (100%) of the Verizon defined contribution plan held in the name of husband.

H-6.   The 2014 Honda motorcycle with vehicle identification number JH2SC6514EK1000142, together with all prepaid insurance, keys, and title documents.

H-7.   The 2013 Volkswagen motor vehicle with vehicle identification number IVWBN7A30DC112794, together with all prepaid insurance, keys, and title documents.

a. Wife shall execute a transfer of title to remove her name from the above stated vehicle on or before January 1, 2016 and thereafter provide said title to Husband.

H-8.   The limited liability company known as Yoh Info Tech LLC, including but not limited to all furniture, fixtures, machinery, equipment, inventory, cash, receivables, accounts, goods, and supplies; all personal property

used in connection with the operation of the business; and all rights and privileges, past, present, or future, arising out of or in connection with the operation of the business. Husband's attorney shall draft documents to remove Wife's name from ownership.

### Confirmation of Husband's Separate Property

IT IS ORDERED AND DECREED the husband is awarded the following as his sole and separate property, and the wife is divested of all right, title, interest, and claim in and to that property:

1.     The gold chain originally belonging to Husband's mother

      a. MANOGNA DEVABHAKTUNI shall return the gold chain to MOHAN RAVI on or before December 15, 2015

### Property to Wife

IT IS ORDERED AND DECREED that the wife, MANOGNA DEVABHAKTUNI, is awarded the following as her sole and separate property, and the husband is divested of all right, title, interest, and claim in and to that property:

W-1. All household furniture, furnishings, fixtures, goods, art objects, collectibles, appliances, and equipment in the possession of the wife or subject to her sole control.

---

W-2.  All clothing, jewelry, and other personal effects in the possession of the wife or subject to her sole control, including but not limited to the following:

1.  All gold jewelry in the parties' safety deposit box, except the gold chain of Husband's mother.

W-3.  All sums of cash in the possession of the wife or subject to her sole control, including funds on deposit, together with accrued but unpaid interest, in banks, savings institutions, or other financial institutions, which accounts stand in the wife's sole name or from which the wife has the sole right to withdraw funds or which are subject to the wife's sole control, including but not limited to:

1.  Bank of America checking account ending in 975; and

2.  Bank of America saving account ending in 1116.

W-4.  All individual retirement accounts, simplified employee pensions, annuities, and variable annuity life insurance benefits in the wife's name, including but not limited to:

1.  Concentra 401K retirement account.

2.  Capital One IRA Account in wife's name with account number ending in 134; and

3.  Capital One IRA Account in husband's name with account number ending in 380.



W-5. All brokerage accounts, stocks, bonds, mutual funds, and securities registered in the wife's name, together with all dividends, splits, and other rights and privileges in connection with them.

W-6.   The 2012 Honda Odyssey motor vehicle with vehicle identification number 5FNRL5H94CB015850, together with all prepaid insurance, keys, and title documents.

### Confirmation of Wife's Separate Property

IT IS ORDERED AND DECREED that the wife is awarded the following as her sole and separate property, and the husband is divested of all right, title, interest, and claim in and to that property:

1.   $15,000.00 paid to Wife by Husband on January 1, 2016;

2.   $25,000.00 paid to Wife by Husband on February 1, 2016; and

3.   $25,000.00 paid to Wife by Husband on March 15, 2016.

### Debts to Husband

IT IS ORDERED AND DECREED that the husband, MOHAN KUMAR RAVI, shall pay, as a part of the division of the estate of the parties, and shall indemnify and hold the wife and her property harmless from any failure to so discharge, these items:

H-1.  The balance due, including principal, interest, and all other charges, on the promissory note payable and given as part of the purchase price of and secured by a lien on the 2014 Honda motorcycle awarded to husband.

H-2.  The balance due, including principal, interest, and all other charges, on the promissory note payable and given as part of the purchase price of and secured by a lien on the 2013 Volkswagen motor vehicle awarded to husband.

H-3.  The following debts, charges, liabilities, and obligations:

1.  The Discover Card ending in 4052 and held in the name of husband.

H-4.  All debts, charges, liabilities, and other obligations incurred solely by the husband from and after December 3, 2015.

H-5.  All encumbrances, ad valorem taxes, liens, assessments, or other charges due or to become due on the real and personal property awarded to the husband in this decree unless express provision is made in this decree to the contrary.

Debts to Wife

W-1.  The balance due, including principal, interest, and all other charges, on the promissory note payable and given as part of the purchase price of and secured by a lien on the 2012 Honda Odyssey motor vehicle awarded to wife.

W-2.  Any and all debt associated with the American Express card account ending in 4005 in wife's name.

*Other Property Related Provisions*

### Refinance of Marital Residence

IT IS FURTHER ORDERED AND DECREED that Husband shall refinance the marital residence located at 12409 Pleasant Hill Lane, Frisco, Texas 75033, with sixty (60) days of the entry of this Decree, thereby removing Wife's name from the note. If Husband fails to refinance the mortgage on the home within sixty (60) days from entry of the Decree of Divorce, then the house shall be listed for sale.

### Payments to Wife

IT IS ORDERED that Husband shall pay to Wife the following payments on the following dates:

1.  $15,000.00 on January 1, 2016;

2.  $25,000.00 on February 1, 2016; and

3.  $25,000.00 on March 15, 2016.

IT IS FURTHER ORDERED that if Husband fails to make any of these payments on the date ordered, then the house located at 12409 Pleasant Hill Lane, Frisco, Texas 75033 shall be listed for sale within seven (7) business days of the date the payment was due

---

Payments to Credit Cards

IT IS ORDERED that the Citibank Credit Card held in the name of MANOGNA DEVABHAKTUNI, with account number ending in 3059, shall be paid by December 4, 2015 as follows:

    1.    $16,000.00 from Husband's Wells Fargo Way2Save savings account; and

    2.    $18,388.00 from Wife's Bank of America savings account.

IT IS FURTHER ORDERED that $1500.00 from Wife's Bank of America savings account shall be paid to the American Express card held in the name of MANOGNA DEVABHAKTUNI, with account number ending in 4005.

Credit Cards to be Closed

IT IS ORDERED that all joint credit card accounts obtained by the parties between the date of marriage and date of divorce shall be closed.

Sale of Marital Residence

IT IS ORDERED that, if Husband fails to make any of the payments to Wife scheduled for January 1, 2016, February 1, 2016, or March 15, 2016, the marital residence located at 12409 Pleasant Hill Lane, Frisco, TX 75033 shall be sold under the following terms and conditions:

    1.    The parties shall list the property for sale within seven (7) days of a missed payment by Husband with a duly licensed real estate broker mutually

agreed upon by MANOGNA DEVABHAKTUNI AND MOHAN KUMAR RAVI, having sales experience in the area where the property is located, provided further that the real estate broker shall be an active member in the Multiple Listing Service with the Denton, Frisco, Plano, or Denton County Board of Realtors.

2.      The property shall be sold for a price that is mutually agreeable to MANOGNA DEVABHAKTUNI and MOHAN KUMAR RAVI. If MANOGNA DEVABHAKTUNI and MOHAN KUMAR RAVI are unable to agree on a sales price, on the application of either party, the property shall be sold under terms and conditions determined by a court-appointed receiver.

3.      If the property is not sold within 180 days after it is placed on the market for sale, either party shall make application for the property to be sold under terms and conditions determined by a court-appointed receiver.

4.      MOHAN KUMAR RAVI shall pay one hundred percent (100%) of all payments of principal, interest, taxes, and insurance on the property during the pendency of the sale, and MOHAN KUMAR RAVI shall have the exclusive right to enjoy the use and possession of the premises until the house is sold. All maintenance and repairs necessary to keep the property in its present condition shall be paid by MOHAN KUMAR RAVI.

5.      The net sale proceeds following payment of items in paragraph 6 below shall be distributed as follows:

a.    If the first $15,000.00 payment due MANOGNA DEVANHAKTUNI on January 1, 2016 is missed, $65,000.00 to MANOGNA DEVANHAKTUNI and the remainder to MOHAN KUMAR RAVI;

b.    If the second $25,000.00 payment due MANOGNA DEVANHAKTUNI on February 1, 2016 is missed, $50,000.00 to MANOGNA DEVANHAKTUNI and the remainder to MOHAN KUMAR RAVI; and

c.    If the third $25,000.00 payment due MANOGNA DEVANHAKTUNI on March 15, 2016 is missed, $25,000.00 to MANOGNA DEVANHAKTUNI and the remainder to MOHAN KUMAR RAVI;

6.    "Net sale proceeds" is defined as the funds remaining after the payment of the following:

a.    outstanding mortgage balance;

b.    property taxes;

c.    assessments;

d.    homeowners' association dues; and

e.    realtor's commission.

*Liability for Federal Income Taxes*

Liability for Federal Income Taxes for Prior Years

IT IS ORDERED AND DECREED that MANOGNA DEVABHAKTUNI and MOHAN KUMAR RAVI shall be equally responsible for all federal income tax liabilities of the parties from the date of marriage through December 31, 2014 and each party shall timely pay 50 percent of any deficiencies, assessments, penalties, or interest due thereon and shall indemnify and hold the other party and his or her property harmless from 50 percent of such liabilities unless such additional tax, penalty, and/or interest resulted from a party's omission of taxable income or claim of erroneous deductions. In such case, the portion of the tax, penalty, and/or interest relating to the omitted income or claims of erroneous deductions shall be paid by the party who earned the omitted income or proffered the claim for an erroneous deduction. The parties agree that nothing contained herein shall be construed as or is intended as a waiver of any rights that a party has under the "Innocent Spouse" provisions of the Internal Revenue Code.

IT IS ORDERED AND DECREED that if a refund is made for overpayment of taxes for any year during the parties' marriage through December 31 of 2014, each party shall be entitled to one-half of the refund, and the party receiving the refund check is designated a constructive trustee for the benefit of the other party, to the extent of one-half of the total amount of the refund, and shall pay to the other party one-half of the total amount of the refund check within five days of

receipt of the refund check. Either party is ORDERED to endorse a refund check on presentation by the other party.

Treatment/Allocation of Community Income for Year of Divorce

IT IS ORDERED AND DECREED that MANOGNA DEVABHAKTUNI AND MOHAN KUMAR RAVI shall be equally responsible for all federal income tax liabilities of the parties from the date of marriage through December 31, 2015, and each party shall timely pay 50 percent of any deficiencies, assessments, penalties, or interest due thereon and shall indemnify and hold the other party and his or her property harmless from 50 percent of such liabilities unless such additional tax, penalty, and/or interest resulted from a party's omission of taxable income or claim of erroneous deductions. In such case, the portion of the tax, penalty, and/or interest relating to the omitted income or claims of erroneous deductions shall be paid by the party who earned the omitted income or proffered the claim for an erroneous deduction. The parties agree that nothing contained herein shall be construed as or is intended as a waiver of any rights that a party has under the "Innocent Spouse" provisions of the Internal Revenue Code.

IT IS ORDERED AND DECREED that if a refund is made for overpayment of taxes for any year during the parties' marriage through December 31, 2015, each party shall be entitled to one-half of the refund, and the party receiving the refund check is designated a constructive trustee for the benefit of the other party, to the

extent of one-half of the total amount of the refund, and shall pay to the other party one-half of the total amount of the refund check within five days of receipt of the refund check. Either party is ORDERED to endorse a refund check on presentation by the other party.

IT IS ORDERED AND DECREED that each party shall furnish such information to the other party as is requested to prepare federal income tax returns for 2015 within thirty days of receipt of a written request for the information, and in no event shall the available information be exchanged later than March 1, 2016. As requested information becomes available after that date, it shall be provided within ten days of receipt.

IT IS ORDERED AND DECREED that all payments made to the other party in accordance with the allocation provisions for payment of federal income taxes contained in this Final Decree of Divorce are not deemed income to the party receiving those payments but are part of the property division and necessary for a just and right division of the parties' estate.

*Division of Undisclosed Assets and Liabilities*

IT IS ORDERED AND DECREED that any assets of the parties not awarded or divided by this Final Decree of Divorce are subject to future division as provided in the Texas Family Code.

IT IS FURTHER ORDERED AND DECREED, as a part of the division of

the estate of the parties, that any community liability not expressly assumed by a party under this decree is to be paid by the party incurring the liability, and the party incurring the liability shall indemnify and hold the other party and his or her property harmless from any failure to so discharge the liability.

*Attorney's Fees*

To effect an equitable division of the estate of the parties and as a part of the division, and for services rendered in connection with conservatorship and support of the child, each party shall be responsible for his or her own attorney's fees, expenses, and costs incurred as a result of legal representation in this case.

*Court Costs*

IT IS ORDERED AND DECREED that costs of court are to be borne by the party who incurred them.

*Resolution of Temporary Orders*

IT IS ORDERED AND DECREED that Petitioner and Respondent are discharged from all further liabilities and obligations imposed by the temporary order of this Court.

*Discharge from Discovery Retention Requirement*

IT IS ORDERED AND DECREED that the parties and attorneys for the parties are discharged from the requirement of keeping and storing the documents produced in this case in accordance with rule 191.4(d) of the Texas Rules of Civil

Procedure.

*Decree Acknowledgment*

Petitioner, MANOGNA DEVABHAKTUNI, and Respondent, MOHAN KUMAR RAVI, each acknowledge that before signing this Final Decree of Divorce they have read this Final Decree of Divorce fully and completely, have had the opportunity to ask any questions regarding the same, and fully understand that the contents of this Final Decree of Divorce constitute a full and complete resolution of this case. Petitioner and Respondent acknowledge that they have voluntarily affixed their signatures to this Final Decree of Divorce, believing this agreement to be a just and right division of the marital debt and assets, and state that they have not signed by virtue of any coercion, any duress, or any agreement other than those specifically set forth in this Final Decree of Divorce.

*Indemnification*

Each party represents and warrants that he or she has not incurred any outstanding debt, obligation, or other liability on which the other party is or may be liable, other than those described in this decree. Each party agrees and IT IS ORDERED that if any claim, action, or proceeding is hereafter initiated seeking to hold the party not assuming a debt, an obligation, a liability, an act, or an omission of the other party liable for such debt, obligation, liability, act or omission of the other party, that other party will, at his or her sole expense, defend the party not

assuming the debt, obligation, liability, act, or omission of the other party against any such claim or demand, whether or not well founded, and will indemnify the party not assuming the debt, obligation, liability, act, or omission of the other party and hold him or her harmless from all damages resulting from the claim or demand.

Damages, as used in this provision, includes any reasonable loss, cost, expense, penalty, and other damage, including without limitation attorney's fees and other costs and expenses reasonably and necessarily incurred in enforcing this indemnity.

IT IS ORDERED that the indemnifying party will reimburse the indemnified party, on demand, for any payment made by the indemnified party at any time after the entry of the divorce decree to satisfy any judgment of any court of competent jurisdiction or in accordance with a bona fide compromise or settlement of claims, demands, or actions for any damages to which this indemnity relates.

The parties agree and IT IS ORDERED that each party will give the other party prompt written notice of any litigation threatened or instituted against either party that might constitute the basis of a claim for indemnity under this decree.

*Clarifying Orders*

Without affecting the finality of this Final Decree of Divorce, this Court expressly reserves the right to make orders necessary to clarify and enforce this

decree.

*Relief Not Granted*

IT IS ORDERED AND DECREED that all relief requested in this case and not expressly granted is denied. This is a final judgment, for which let execution and all writs and processes necessary to enforce this judgment issue. This judgment finally disposes of all claims and all parties and is appealable.

*Date of Judgment*

SIGNED on _____February 19, 2016_____

_____
JUDGE PRESIDING

APPROVED AS TO FORM ONLY:

**LAW OFFICE OF A. BROOK FULKS, PLLC**
5900 S. Lake Forest Dr., Ste. 200
McKinney, Texas 75070
Tel: (469) 458-0211
Fax: (469) 458-7211


By: _A. Brook Fulks_
    A. Brook Fulks
    State Bar No. 24071300
    Attorney for Petitioner
    E-mail: brook@fulksfamilylaw.com


**MAS Law Firm**
212 West Spring Valley Road
Richardson, Texas 75081
Tel: (972) 789-1664
Fax: (972) 789-1665
ashemesh@modjarrad.com

By: _____
    Amber K. Shemesh
    State Bar No. 24075066
    Attorney for Respondent


APPROVED AND CONSENTED TO AS TO BOTH FORM AND SUBSTANCE:

_D. Mallesmar, 01/17/2016_
MANOGNA DEVABHAKTUNI, Petitioner

_ML hv.R   02/12/2016_
MOHAN KUMAR RAVI, Respondent


---

**Agreed Final Decree of Divorce**                                     **Page 69 of 69**



CERTIFIED A TRUE AND CORRECT COPY
OF THE ORIGINAL ON FILE IN MY OFFICE

**SHERRI ADELSTEIN**
DENTON COUNTY DISTRICT CLERK

_2/19/16_ - Elizabeth Jones
Date                                       Deputy Clerk